UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-CIV-2057-BLOOM

BARBARA HALL,

Plaintiff,

-vs-

CARNIVAL CORPORATION,

Defendant.
_______________________________/

SWORN VIDEO DEPOSITION

TUESDAY, NOVEMBER 30, 2021

12:54 P.M. TO 4:19 P.M.

DEPOSITION OF

SUSAN VASQUEZ

Taken before Jorge Garcia, Court Reporter, a Notary Public for the State of Florida at Large, pursuant to Notice of Taking Deposition Duces Tecum filed in the above-styled cause.

occurred. That she had seen the subject step up into the bathroom and the threshold around the shower. She knew it was there. She just, I think, was sleepy, and little bit intoxicated, and just -- just forgot about it, and tripped over it in the middle of the night.

Q. What evidence, if any, does Carnival have that Ms. Hall was intoxicated at the exact time of her fall?

A. She had 12 alcohol drinks in about the 9 hours prior to her last drink at 10:30 at night. 7 of those were in the last 2 or 3 hours of the evening. She admitted in her deposition testimony that she consumed all or part of every single one of those drinks. She herself said she wasn't sure if alcohol was a factor or not. When she was asked the question under oath, you know, "Were you drunk?" She was like, "Well, I'd been drinking." I mean, she conceded that that might have had a part, a role, in what happened.

She also said at least three or four times in her deposition testimony that she was very sleepy, and that -- and that she was a very large woman in a small bathroom, and she obviously just was not paying attention to where -- to her surroundings. She said that she knew the ledge was there. It was not a hidden danger to her. She was aware of the threshold,



or the lip around the shower. And, indeed, that would be common sense that the shower would have some time of lip around it.

And I think all of those circumstances would easily allow a finder of fact to find her comparatively negligent for this incident. If not completely at fault.

Q. Sure. Does Carnival have a breathalyzer test that evinces my client was intoxicated at the moment of her fall?

A. No. Carnival does not ever give breathalyzers to guests, unless a doctor needed it for a medical reason, there would be no reason to do that. But no.

Q. Does Carnival have a blood alcohol reading of my client at the time of her fall?

A. You know that we do not, because she didn't report it for three days, and we didn't have any opportunity to do that. Not that we would have. Carnival would not get a breathalyzer reading, or blood alcohol results from a guest, simply to prove a level of intoxication. That's not a policy or procedure that is followed onboard our ships.

Q. Does Carnival know of any witness that described my client as intoxicated at the moment of her fall?



A. I only know your client herself testified that she wasn't sure if it played a factor. But she had been drinking all day, it was the middle of the night, she had just woken up from a dead sleep, and was sleepy, possibly still intoxicated, and not paying attention to her surroundings.

Q. She didn't say possibly intoxicated in her deposition, did she?

MR. PELAEZ: Objection to form.

THE WITNESS: The question, I think, was, "Were you drunk?" And her answer was, "Well I'd been drinking." So, I mean, it's, you know -- and she admitted that she'd been drinking all night. That there was 12, you know, drinks in the hours leading up to her fall.

BY MR. HERNANDEZ:

Q. Not all night, right? Because this happened -- what time did -- what time did her fall happen, do you even know?

A. She wasn't even sure. Sometime after midnight. She said she got back before midnight, and sometime after midnight.

Q. Has Carnival's investigation lead it to any conclusions relative to whether this danger was open and obvious?



A. Yes.

Q. What conclusions has Carnival arrived at?

A. I would first say, this is not a dangerous condition. This is a small lip in a shower to keep water inside a shower, that is common in any configuration, land-based, or otherwise. You have some type of barrier in a shower to keep water from going all over the bathroom floor. So I would not say that that's a dangerous condition.

However, it is an open and obvious condition for which, not only would any reasonable person know that it was there, your own client testified under oath that she saw it before at least twice. That she knew it was there. She had successfully navigated that bathroom already two times before she fell in the middle of the night that night.

Q. Any other elements that form your -- your company's conclusion that this was open and obvious?

A. I mean, you can see from any photograph taken of it that you can clearly see that it's a shower, clearly see that there's a lip, and she testified that she did know about it, saw it, and it was open and obvious to her.

Q. She used those words, open and obvious?

A. No. Because that's a legal term. But she