UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-CIV-20557-BLOOM

BARBARA HALL,

Plaintiff,

v.

CARNIVAL CORPORATION,

Defendant.
_______________________________________/

**PLAINTIFF, BARBARA HALL'S,**
**MOTION TO STRIKE/LIMIT UNRELIABLE EXPERT OPINIONS**
**AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, BARBARA HALL("Plaintiff"), by and through undersigned counsel, and pursuant to Rule 26 of the Federal Rules of Civil Procedure, Rule 16.1 of the Local Rules for the Southern District of Florida, and Rule 702 of the Federal Rules of Evidence, hereby files this, her Motion to Strike/Limit Unreliable Expert Opinions of David Martyn and Lewis Eastlick, MD, and states as follows:

1. This case presents a maritime personal injury action On March 1, 2020, the first night of a cruise aboard Defendant's VALOR, as Plaintiff attempted to enter the bathroom in her cabin, she tripped over an unreasonably high and undifferentiated ledge/curb separating the shower from the remainder of the bathroom. As can be noted from the photographs below the, the bathroom floor, shower ledge/curb, and shower are all the same color and texture and the shower ledge/curb is hidden from view when the shower curtain is closed:





2. As a consequence, Plaintiff sustained an intra-articular fracture with displacement of the dominant right wrist for which she was compelled to undergo an open reduction with internal fixation (with insertion of a volar plate and screws) on March 10, 2020. Despite the severity of this injury, Defendant refused to treat Plaintiff in its shipboard infirmary because she was unable to pay.

3. For the reasons outlined below, the excerpted opinions of Messrs. Martyn and Eastlick fail to meet the requisites of FRE 702/*Daubert* in that these opinions fail to be grounded on reliable scientific methodology.

WHEREFORE, Plaintiff, BARBARA HALL, respectfully moves the Court for entry of an Order striking the unreliable expert opinions of Messrs. Martyn and Eastlick as outlined below.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Undersigned counsel certifies that he has conferred, in writing on December 14 and 15, and offered to confer telephonically with defense counsel relative to this Motion. As noted below, only partial agreement has been reached.

## MEMORANDUM OF LAW

## I. ADMISSION OF EXPERT TESTIMONY: GENERALLY

FRE 702 requires an expert to be qualified either by knowledge, skill, experience, training, or education. However, an expert's opinions **must be based upon sound scientific principles** and cannot be based on experience alone. *Kumho Tire Co. Ltd v. Carmichael*, 526 U.S. 137, 157, 119 S.Ct. 1167 (1999). FRE 702 plainly contemplates that the District Court will serve as a gatekeeper to the admission of scientific testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 2795 (1993). The district courts maintain this role "to ensure that speculative, unreliable expert testimony does not reach the jury 'under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (*quoting McCorvery v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.

2002). As gatekeeper, the district courts properly exclude any expert or expert opinion that does not satisfy the following criteria:

> (1) The expert must be qualified to testify competently regarding the matters he intends to address; (2) the methodology used to reach any conclusions must pass the *Daubert* test of reliability; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

FRE 702; *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341-2 (11th Cir. 2003) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 138 F.3d 548, 562 (11th Cir. 1998)). The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there is inevitably some overlap, they remain distinct concepts that must be individually analyzed. *United States v Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

**The foundation of reliability is critical, because without it, an expert may support an opinion with the mere assertion "because it is my opinion."** An expert opinion is not admissible when the only connection between the conclusion and the existing data is the expert's own assertion. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (citing *General Electric v. Joyner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1997)); *see Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) (holding that nothing in either *Daubert* or the Federal Rules of Evidence requires a District Court to admit opinion evidence which is connected only to existing data only by the *ipse dixit*[1] of the expert). To warrant admissibility, the expert's testimony must be derived from his/her scientific, technical, or otherwise specialized knowledge, and "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 113 S.Ct. at 2795-96. Moreover, the party offering the expert testimony carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence.

[1] *Ipse dixit*: He himself said it; a bare assertion resting on the authority of an individual. Black's Law Dictionary 5th Ed. (1979).

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

An expert's experience, standing alone, is not a sufficient foundation to render reliable any conceivable opinion the expert may express; to the contrary, precedent plainly establishes that one may be considered an expert but still offer unreliable testimony. *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

When the reliability of an expert's methodology is at issue, the 11th Circuit has instructed that:

> In deciding the question of reliability, the Supreme Court articulated a non-exhaustive list of relevant factors to consider: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Daubert,* 509 U.S. at 593-94; *McCorvey,* 298 F.3d at 1256.

*Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citations in original); *see also Crouch v. Teledyne Continental Motors, Inc.* 2011 U.S.Dist.Lexis 70449, *4 (11th Cir. 2011); *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

The 11th Circuit has further instructed that "[t]he proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care*, 582 F.3d 1227, 1232 (11th Cir. 2009)).

Defendant's experts may not rely on their experience alone to form opinions based solely on their *ipse dixit*. This type of expert testimony is inadmissible under FRE 702. *See Kumho Tire*, 526 U.S. at 157; *Benfield*, 140 F.3d at 921. Moreover, "while an expert witness 'may testify as to his opinion on an ultimate issue of fact,' he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Mendel,* Case No. 10-23398-Civ-King/McAliley at p. 3 (quoting *U.S. v. Delatorre,* 308 Fed.Appx.380, 383 (11th Cir. 2009) (emphasis added).

## II. EXPERT TESTIMONY MUST MEET THE 3-PART FRE 702 ADMISSIBILITY TEST

"The primary purpose of any *Daubert* inquiry is for the district court to determine whether [the] expert, 'whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *In re Traysol Products Liability Litigation,* 2001 U.S.Dist.Lexis 98524 (S.D.Fla. 2011).

Apropos of this purpose, the 11th Circuit applies a 3-part inquiry to determine the admissibility of expert testimony under FRE 702:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Quiet Tech. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1340-41 (11th Cir. 2003); *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004).

### A. Expert Qualifications

Under FRE 702, for a witness to qualify as an "expert," he/she must be possessed of such knowledge, skill, experience, training, or education that his/her opinion will serve to aid the trier of fact in understanding the evidence. *Jenkins v. U.S.*, 307 F.2d 637, 647 (D.C.Cir. 1962); *Hughes v. Hemingway Transport, Inc.*, 539 F.Supp. 130, 133 (E.D.Penn. 1982); *Hartke v. McKelway*, 526 F.Supp. 97, 101 (D.D.C. 1981), *aff'd,* 707 F.2d 1544 (D.C.Cir. 1983), *cert. denied*, 464 U.S. 983, 104 S.Ct. 425 (1983). The determination as to whether a particular witness is qualified to testify in the capacity of an "expert," is within the sound discretion of the trial court. *U.S. v. Mitchell*, 954 F.2d 663, 666 (11th Cir. 1992); *Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 682 (3rd Cir. 1980); *Arnold v. Loose*, 352 F.2d 959, 962 (3rd Cir. 1965).

**B. Reliability of Methodology**

The reliability of any expert' opinions is measured by the trustworthiness of his/her methodology and his/her application of the chosen methodology to an analysis of the facts and data of the case. Simply put, the "methodology" ostensibly attendant to the opinions below fails. The law requires the party offering the expert to affirmatively establish the expert's qualifications and the soundness of his methodology. The burden is on Defendant to prove that its experts' methodology is sufficiently reliable to warrant admissibility as expert opinion testimony. *Quiet Technology CD-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

The Court's *Daubert* gate-keeping function applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 119 S.Ct. at 141. The "reliability" of the defense physician opinions below fails inasmuch as neither doctor has conducted the requisite differential etiology analysis in arriving at the challenged opinions. The opinions below are the epitome of "because it is my opinion" testimony which is improper under the FRE and interpreting legal authority.

**C. Assistance to the Trier of Fact**

Defendant must demonstrate that the foregoing opinions will be helpful to the trier of fact in order for these opinions to be admissible. *St. Cyr v. Flying J, Inc.*, 2008 U.S.Dist.Lexis 107653, *18 (M.D.Fla. 2008) ("the Eleventh Circuit follows the generally accepted rule that expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves"); *Frazier,* 387 F.3d at 1260. In other words, "[e]xpert testimony is [only] admissible if it concerns matters that are beyond the understanding of the average lay person." *U.S. v. Masferrer*, 367 F.Supp.2d 1365, 1373 (S.D.Fla. 2000).

This prong of the inquiry is particularly apropos to the myriad of improper opinions (outlined below) to be expressed by Mr. Martyn concerning "conspicuousness," "visual

indicators," "visual cues" and "contrast."

**Mr. Martyn's Unreliable Opinions**

In his Expert Report **[Exhibit A]**, Mr. Martyn opines:

1. **Page 5 - The shower threshold arrangement is reasonably safe.**

   **Page 5 - The shower threshold is reasonably conspicuous.**

   **Page 5 - The toilet is accessible without having to step on or over the shower threshold.**

It is improper for Mr. Martyn to opine on an ultimate issue such as "reasonableness," as this is a determination solely within the Jury's province. With these 3 opinions Defendant seeks to put the expert's imprimatur on what is "reasonable" and impermissibly tell the Jury how to decide the case.

Furthermore, on the issue of "conspicuousness," Mr. Martyn is unqualified to come to this opinion given that he is not an expert the field of accident reconstruction. Given Mr. Martyn's lack of training and experience in these fields, these opinions should be excluded. *See Taber v. Allied Waste Sys., Inc*, 642 F. Appx 801, 807 (10th Cir. 2016) (engineering expert was unqualified to give opinion on how an accident occurred where he was not qualified by training or experience in the field of accident reconstruction); *Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir. 1999) (finding no error in striking the opinions of an engineer who had no training, experience, or certifications in accident reconstruction); *Rodriguez v. JLG Industr., Inc*, 2012 WL 12882925, at *9 (E.D.Cal. Oct. 29, 2012) (excluding expert who was not qualified by background in accident reconstruction and whose opinion was not based on sufficient facts or data).

Insofar as Mr. Martyn's qualifications, his CV is devoid of reference to education, training, or experience in the field of accident reconstruction. [Martyn CV, attached as **Exhibit B**]. His past employment instead reflects experience in analyzing mechanical component failures and compliance with maritime safety rules and regulations, and in investigating accidents, but nothing describing or involving accident reconstruction in any way. Mr. Martyn's past licenses and

certifications are similarly devoid of references to the field of accident reconstruction, and he has not been accredited as an accident reconstruction expert by any professional association or licensing body. Finally, Mr. Martyn has taken no accident reconstruction courses and written any articles on the topic.

Finally, insofar as the "conspicuousness" of the shower ledge/curb, in his deposition (transcript not yet available) Mr. Martyn admitted that the ledge/curb *"should be apparent to anyone who is not blind."* Accordingly, the issue of "conspicuousness" as framed by Mr. Martyn is not one where the Jury needs expert witness opinion or testimony. *St. Cyr*, 2008 U.S.Dist.Lexis at *18.

2. **<u>Page 10</u> – The bathroom floor was raised above the cabin floor to accommodate the bathroom plumbing in between.**

Mr. Martyn cites to absolutely no evidence for this proposition/opinion and, as such, this opinion violates FRE 702. Further, during his deposition, Mr. Martyn admitted that he has seen no evidence in the record to support this opinion and that it is based solely on his *"knowledge and experience in ship construction."* This is precisely the type of "it is so because I say it is so" expert testimony which the FRE and *Daubert* prohibit.

3. **<u>Page 12</u> - According to the letter from Ms. Hall's attorney to Carnival, dated May 29, 2020, the incident was described as a "trip and fall, when the ship swayed, over a raise shower threshold lip in the bathroom where the shower and flooring with the same material and coloring."**

The May 29, 2020 letter of representation was sent by undersigned counsel to Defendant shortly following the incident of March 1, 2020 and was sent in compliance with the provision contained in Defendant's passage contract, a contract of adhesion, requiring that it be placed on notice of a claim for personal injury within 6 months of occurrence. There is no other evidence in the record that Plaintiff's fall was caused by movement of the ship.

Defendant has agreed not to elicit this opinion at trial from Mr. Martyn.

4. **<u>Page 14</u> - In addition to direct observation, there are other visual indicators for the presence of the shower threshold to reduce potential trips. The placement of the white roll-up up bathmat/towel by housekeeping parallel against the edge of the threshold provides a visual indication of the shower's placement within the bathroom. Additionally, the white towel's contrast against the blue floor immediately draws your attention after you open the bathroom door. If presumably, passengers open the bathroom door and notice the bright metallic threshold between the cabin and the bathroom, their gaze is already drawn to this area.**



Again, Mr. Martyn is not qualified to render opinions in the field of accident reconstruction. More importantly, however, Plaintiff has specifically testified, under oath, that the white towel was **<u>not present when she fell</u>**:

Q: Was this photo taken after your incident
A: Yes.

Q: All right. At the time you fell was this towel in the photo present?
A: No.

[Plaintiff's deposition at pp. 144-145, attached as **<u>Exhibit C</u>**] Importantly, Defendant has adduced no evidence to contradict this testimony and Mr. Martyn concedes this in his report (Exhibit A at p. 15 - *"Ms. Hall indicated that the rolled-up towel/mat was not present during her fall"*) and

conceded this during his deposition.

Furthermore, during his deposition, Mr. Martyn conceded that this would be *"apparent to anyone who is not blind,"* that this opinion is based on nothing more than his personal observation, that the methodology he applied did not go beyond this "personal observation," and that he conducted no "contrast testing" and that his report contains no "contrast index."

Alternatively, this opinion is properly excluded as irrelevant and/or unduly prejudicial pursuant to FRE 401/403.

FRE 401 (Test for Relevant Evidence) provides:

> Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FRE 402 (General Admissibility of Relevant Evidence Admissible) provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FRE 403 (Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons) provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FRE 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. *Sprint/United Mgmt. Co. v. Medelsohn*, 552 U.S. 379, 388 (2008); *Duchateau v. Camp Dresser & McKee, Inc.*, Case No. 10-Civ-60712-Rosenbaum (S.D.Fla. Dec. 19, 2011). FRE 402 specifically prohibits irrelevant evidence. The Advisory Committee has stated that "relevance is not an inherent characteristic of any item of evidence but exists only

as a relation between an item of evidence and a matter properly provable in the case." FRE 401. Pursuant to FRE Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Ostrow v. Globecast America. Inc.,* 825 F.Supp.2d 1267, 1274 (S.D.Fla. 2011). The Court enjoys "wide discretion" in determining whether to exclude evidence under Rule 403. *Id.* at 1274-75 (citing *Wilson v. Attaway,* 757 F.2d 1227, 1242 (11th Cir.1985) (citations omitted)).

**5. <u>Page 15</u> - The discontinuity in the floor's molded grid pattern created by the threshold and adjoining drain channels may provide an additional visual indicator to the presence of the threshold. Finally, the presence of the shower curtain, visible without looking at the floor, should also provide a visual indication of the presence of he shower and a threshold.**

Again, not only is Mr. Martyn unqualified to render this opinion, but this opinion offered in terms of "may" and "should" has not been tested and is thus devoid of he requisite reliable methodology for admissibility. "Scientific methodology … is based on generating hypotheses and testing them to see if they can be falsified." *Dauber*t at 59. In arriving at this opinion, Mr. Martyn has failed to test the opinion thus rendering it inadmissible.

Again, during his deposition, Mr. Martyn admitted that that this opinion is based on nothing more than his personal observation, that the methodology he applied did not go beyond this "personal observation," and that he conducted no testing to arrive at this opinion

In his Rebuttal Expert Report **[<u>Exhibit D</u>]**, Mr. Martyn opines:

**6. <u>Page 3</u> – [T]he irregular pentagonal shape of the shower pan, with an angle in the open side(s) of the shower, is an additional visual cue of a bathroom that does not resemble its land-based counterparts. Showers in land-based structures are typically rectangular with three walls and one open side with a door or curtain.**

Nothing in Mr. Martyn's qualifications, education, experience, or training qualifies him to opine on "visual cues." Further, this is something very much in the province of a lay person and, as such, within the province of the Jury. Again, this opinion is violative of FRE 702 and *Daubert.*

**7. <u>Page 3</u> – Although they are the same color and material, their orientations relative to the light source (above the vanity mirror) may create varying shades of light and dark that may produce sufficient contrast to be visually recognizable without the other features identified in S-E-A's initial report.**

Mr. Martyn has no qualifications, education, experience, or training to opine on issues of lighting or illumination. Further, this opinion fails from a methodology-standpoint in that Mr. Martyn's report are bereft of any lighting or illumination readings.

**<u>Dr. Eastlick's Unreliable Opinions</u>**

In his Expert Report **[<u>Exhibit E</u>]**, Dr. Eastlick opines:

**1. <u>Page 5</u> - Her complaints of numbness in all of the fingers of her right hand while writing are not supported by history or by objective physical measures of sensibility and motor function.**

From this opinion, it is unclear whether Dr. Eastlick is calling Plaintiff a liar or attributing the numbness to something other than her shipboard fall. What is clear is that he has failed to arrive at this opinion through the application of a reliable methodology -- differential etiology.

Where a medical expert seeks to opine on the cause of condition/injury at issue, the expert must apply the relevant and appropriate methodology -- **differential etiology**. *Hendrix ex rel. G.P. v. Evenflo Co.*, Inc., 609 F.3d 1183, 1195 (fn.5) (11th Cir. 2010). Differential etiology is a medical process of elimination whereby the possible causes of a condition are considered and ruled out one-by-one, leaving only one cause remaining. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1195 (11th Cir. 2010). A reliable differential etiology analysis is accomplished in two steps: (1) compiling a comprehensive lists of hypotheses that might explain the set of salient clinical findings under consideration; and (2) the expert must eliminate all causes but one. *Hendrix*, at 1195 (citations omitted). The second step is crucial. An expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation. *Hendrix*, 609 F.3d at 1197. Differential etiology is a "causation-determining methodology."

*Higgins v. Koch Dev. Corp.*,794 F.3d 697 (7th Cir. 2015); *Myers v. Illinois Central R/R Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

Where, as here, an expert fails to offer an explanation for why the alternative causes are ruled out, then the expert's testimony is justifiably excluded. The reliability of the expert's method is judged by the application of the differential etiology approach to the facts of the case and the validity of the expert's particular method of analyzing the data and drawing conclusions therefrom. *Hendrix*, at 1195. This legal standard for admissibility is applied even where science has not definitively determined the cause of why an ailment develops: Given time, information, and resources, courts may only admit the state of science as it is. Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles. 'The courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it.' *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)). As the gatekeepers, the district courts are bound to rigorously scrutinize the reliability of the proffered expert opinions.

2. **Page 7 - Insofar as additional/unnecessary mental anguish/pain/suffering/distress are concerned, a wrist fracture requires six to eight-weeks of time in order to heal. Ms. Hall's records indicate her fracture healed in a normal way and healing was not delayed. Dr. Unruh returned her to work within six-weeks of the surgery. There is no documentation that Ms. Hall's mental anguish/pain/suffering/distress was impacted in anyway as alleged in Plaintiff's Complaint #35.**

As an Orthopaedist, Dr. Eastlick is not qualified to opine on issues of mental anguish or pain and suffering from an emotional standpoint. Further, he has conducted, nor is he qualified to conduct, any personality of psychologic assessment of Plaintiff.

Dated: December 17, 2021
Miami, Florida

/s/ *Eduardo J. Hernandez*
EDUARDO J. HERNANDEZ
Florida Bar No.: 061451
ehernandez@ejh-law.com
EDUARO J. HERNANDEZ, LLC
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 17th day of December, 2021, via Email to all Counsel on the attached Service List.

**EDUARDO J. HERNANDEZ, LLC**
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

/s/ *Eduardo J Hernandez*
EDUARDO J. HERNANDEZ
Florida Bar No.: 061451
ehernandez@ejh-law.com

**SERVICE LIST**

**Peter G. Walsh**
Florida Bar No. 970417
pwalsh@1800askfree.com
DAVID W. SINGER & ASSOC., P.A.
1011 South Federal Highway
Hollywood, Florida 33020
Tel.: (954) 920-1571
Fax.: (954) 926-5746

**Eduardo J. Hernandez**
Florida Bar No. 061451
ehernandez@ejh-law.com
EDUARDO J. HERNANDEZ, LLC
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

**Attorneys for Plaintiff**

**Christopher Smith**
Florida Bar No. 607363
csmith@fowler-white.com
FOWLER, WHITE, BURNETT, P.A.
1395 Brickell Avenue – 14th Floor
Miami, Florida 33131
Tel.: (305) 789-9200
Fax.: (305) 789-9201

**Attorneys for Defendant**