UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BARBARA HALL,

Plaintiff,

v.

CARNIVAL CORPORATION,

Defendant.

CASE NO. 21-cv-20557-BB
Judge Beth Bloom

**DEFENDANT'S STATEMENT OF MATERIAL FACTS TO MOTION FOR SUMMARY JUDGMENT**

1. Plaintiff, a Missouri resident, was a cruise passenger onboard the Carnival *Valor* for a February 29, 2020, Caribbean cruise leaving from New Orleans, Louisiana. [Plaintiff Depo. p. 84, attached as Exhibit 1].

2. Plaintiff booked her own cruise online using her debit card. [Plaintiff Depo. p. 85].

3. Plaintiff also purchased an alcoholic drink package for her cruise, allowing her to purchase 15 drinks per day. [Plaintiff Depo. p. 106]. The alcoholic drink package cost $259.75. [Plaintiff Depo. Ex. 17, attached as Exhibit 2].

4. Plaintiff is a licensed practical nurse. [Plaintiff Depo. p. 17-18].

5. Plaintiff maintains employer-based health insurance. [Plaintiff Depo. p. 42].

6. After boarding the ship, Plaintiff and her traveling companion, Angela Vaughn, had a drink at the ship's welcome party. [Plaintiff Depo. p. 97-98]. Vaughn is also a nurse. [Vaughn Depo. p. 16, attached as Exhibit 3].

7. Vaughn had her own individual alcoholic drink package as well. [Plaintiff Depo. p. 188].

8. Plaintiff then dropped her luggage off at her cabin. [Plaintiff Depo. p. 98]. She used the cabin bathroom without issue. [Plaintiff Depo. p. 100-01].

9. Plaintiff testified that she had to walk over a threshold between the cabin and the bathroom to enter same. [Plaintiff Depo. p. 101]. Plaintiff was able to observe that the bathroom had a shower. [Plaintiff Depo. p. 101]. Nothing blocked Plaintiff's view of the bathroom's shower. [Plaintiff Depo. p. 101].

10. Plaintiff admitted that she noticed that the shower had a blue threshold separating it from the bathroom on her first use of the bathroom. [Plaintiff Depo. p. 102]. She admitted the threshold was visible to her. [Plaintiff Depo. p. 103].

11. Plaintiff used a tub/shower combination at home so she was used to having to step over the tub portion to use the shower. [Plaintiff Depo. p. 179]. Plaintiff was aware that showers have thresholds that may need to be stepped over. [Plaintiff Depo. p. 179].

12. Plaintiff and Vaughn "walked all over the ship" after dropping off their luggage. [Plaintiff Depo. p. 107]. They visited the casino bar. [Plaintiff Depo. p. 108]. Plaintiff and Vaughn drank at the casino bar. [Plaintiff. Depo. p. 11-12].

13. Plaintiff and Vaughn had more drinks after dinner. [Plaintiff Depo. p. 113].

14. Plaintiff purchased at least 12 drinks—a combination of fruity cocktails, shots, and wine—on the day of the incident. [S. Vazquez Depo. p. 45, attached as Exhibit 4; Plaintiff Depo. p. 176-77]. Plaintiff admitted to drinking at least part of all 12 drinks. [Plaintiff Depo. p. 177].

15. Plaintiff and Vaughn retired to their cabin sometime before midnight. [Plaintiff Depo. p. 114].

16. In response to a question "were you drunk when you went to bed?" Plaintiff responded "I had been drinking." [Plaintiff Depo. p. 181].

17. Vaughn testified that "I just don't remember a whole bunch, as terrible as that sounds." [Vaughn Depo. p. 49]. Vaughn "was drinking shots like they were going out of style[ ]" and "drinking like a sieve." [Vaughn Depo. p. 54, 78].

18. Plaintiff used the bathroom again without issue of the shower threshold before going to sleep. [Plaintiff Depo. p. 115].

19. Plaintiff woke up "in the middle of the night" to use the bathroom again. [Plaintiff Depo. p. 117]. Plaintiff turned on the lights in the bathroom. [Plaintiff Depo. p. 122]. Plaintiff admitted the lights provided sufficient illumination to the bathroom for her to see clearly. [Plaintiff Depo. p. 165]. Plaintiff closed the door shut behind her. [Plaintiff Depo. p. 147].

20. Plaintiff—while trying to use the toilet—tripped over the shower threshold and fell. [Plaintiff Depo. p. 117]. Plaintiff testified it was a small bathroom. [Plaintiff Depo. p. 190].

21. There was no water or liquid on the bathroom floor. [Plaintiff Depo. p. 124]. Nothing blocked Plaintiff's view of the shower threshold. [Plaintiff Depo. p. 147].

22. Plaintiff admitted to perceiving the threshold into the bathroom and stepping over same. [Plaintiff Depo. p. 123-24].

23. Plaintiff knew there was a threshold between the shower and the rest of the bathroom. [Plaintiff Depo. p. 181-82].

24. After the fall, Plaintiff and Vaughn suspected that Plaintiff suffered a sprained or fractured wrist. [Plaintiff Depo. p. 125]. Vaughn was "kind of on the fence" whether Plaintiff's wrist was sprained or fractured. [Vaughn Depo. p. 72].

25. Plaintiff did not call for medical assistance or go to the medical center immediately following her fall. [Plaintiff Depo. p. 125].

26. The following morning on March 1st, Plaintiff went to the guest services desk to inquire about a refund of an upcoming ziplining shore excursion. [Plaintiff Depo. p. 126].

27. Plaintiff and Vaughn left the vessel on March 2nd in Cozumel, Mexico to visit the beach and shop for souvenirs. [Plaintiff Depo. p. 128].

28. Plaintiff claims that she visited the medical center that evening after eight hours in Cozumel. Plaintiff alleges that she went to guest services again to ask about the medical center, and "they told me it was going to be $500 on my credit card and I said I didn't have that, so I had to leave. I was just outraged. You know, I told them I have my insurance and they said they don't take private insurance." [Plaintiff Depo. p. 130].

29. Plaintiff claims that the conversation was a minute or two. [Plaintiff Depo. p. 132].

30. Vaughn testified that Plaintiff's injury was not an emergency. [Vaughn Depo. p. 73]. According to Vaughn, "[i]t takes a lot to be an emergency for a couple of nurses." [Vaughn Depo. p. 73].

31. Vaughn testified that the shipboard medical personnel did not intend to harm Plaintiff; "[h]e wasn't very helpful, but he didn't hurt her, so." [Vaughn Depo. p. 77].

32. The shipboard medical center is generally a self-pay facility as American-based health insurance is not accepted. [S. Vazquez Depo. p. 133]. Charges at the medical center are typically charged to the passenger's onboard account. [S. Vazquez Depo. p. 133].

33. If Plaintiff wanted to see the shipboard physician, "she would have seen the doctor, and they would have dealt with the payment situation later." [S. Vazquez Depo. p. 131].

34. Payment is not an upfront requirement to see the shipboard physician. [Cagumbay Depo. p. 13, attached as Exhibit 5]. The medical center does not demand payment as a precondition to consult the shipboard physician. [Cagumbay Depo. p. 13].

35. Passengers will be treated in the medical center even if they cannot afford to pay for treatment. [Cagumbay Depo. p. 17-18].

36. Plaintiff went on another shore excursion to Progreso/Yucatan, Mexico the following day on March 3rd. [Plaintiff Depo. p. 135-36]. Plaintiff bought an ACE bandage wrap in Yucatan, but did not seek out medical treatment. [Plaintiff Depo. p. 135-36].

37. Plaintiff claims she went back to the guest services desk, where she was told "that sometimes when people can't afford, they have a compassionate care and I should go down there and tell them that. So when I went down there and talked to the gentleman that was down there, he said he didn't know what the guy was talking about, they don't have any such thing." [Plaintiff Depo. p. 138-39].

38. Plaintiff testified that she showed her wrist to the crewmembers at guest services, but there is no evidence she showed her wrist to anyone in the medical center. [Plaintiff Depo. p. 138-39].

39. Plaintiff chose not to consult with the shipboard physician. [S. Vazquez Depo. p. 25; Cagumbay Depo. p. 63].

40. Plaintiff thought it was unnecessary to pay a consultation fee associated with seeing the shipboard physician because she is a nurse and would seek treatment when she returned home from the cruise. [S. Vazquez Depo. p. 66]. Plaintiff stated she had insurance and did not want to pay the medical charges. [S. Vazquez Depo. p. 73].

41. Joseph Cagumbay was the nurse onboard the *Valor* during Plaintiff's cruise. The shipboard medical center maintains a medical interaction log of every interaction with guests or patients. [Cagumbay Depo. p. 8; Interaction Log, attached as Exhibit 6]. There is no interaction

with Plaintiff for March 1st. [Cagumbay Depo. p. 10]. Plaintiff only appears on the medical interaction log on March 4th. [Cagumbay Depo. p. 10, 19].

42. According to Cagumbay, Plaintiff "asked how much it will cost for doctor's consultation. So informed the guest possible charges. So my advice is to – I advised her that – the guest to be seen by the doctor for treatment and further evaluation, and her response, on my advice, the guest stated or a verbal host stated that she will see the doctor back home. She stated that she's also a nurse and she stated that it's already happened three days ago. That is all, sir." [Cagumbay Depo. p. 10-11].

43. Plaintiff disembarked the vessel on March 5th when it arrived back in New Orleans. [Plaintiff Depo. p. 156].

44. Plaintiff did not seek out any medical treatment in New Orleans after leaving the ship. [Plaintiff Depo. p. 156]. Plaintiff and Vaughn instead made the two-day drive back home to Missouri. [Plaintiff Depo. p. 156-57].

45. Plaintiff did not seek urgent care in Missouri either since she "figured it's already been broke for five days, so." [Plaintiff Depo. p. 157].

46. Plaintiff had surgery on her wrist to repair a distal radius fracture on March 10th. [Plaintiff Depo. p. 158]. None of her treating doctors have told Plaintiff her having surgery ten days after her fall was too much of a delay or that sooner surgery would have provided a better result. [Plaintiff Depo. p. 158-59].

47. Plaintiff's treating orthopedic surgeon, Dr. Kenneth Unruh, testified that patients can have a good surgical result of a distal radius fracture with a ten day window from their initial injury. [Dr. Unruh Depo. p. 71, attached as Exhibit 7].

48. Dr. Unruh was of the opinion that Plaintiff did not suffer any additional injury from the date of Plaintiff's fall to his initial visit on March 9th. [Dr. Unruh Depo. p. 68].

49. Dr. Unruh had no opinion regarding Plaintiff's treatment onboard the *Valor*, testifying "I don't know details of her care on the ship, so I can't really be critical of them." [Dr. Unruh Depo. p. 72].

50. Plaintiff contends that the shipboard medical staff should have done more to make her more comfortable. [Plaintiff Depo. p. 160].

51. There were no work orders related to changes, repairs, or modifications to the shower threshold in the bathroom in Plaintiff's cabin for the three year period preceding her incident. [S. Vazquez Depo. p. 116].

52. Carnival does not warn passengers that there is a threshold to enter the cabin bathroom shower. [S. Vazquez Depo. p. 129]. There are no warnings signs or placards that the shower has a threshold. [S. Vazquez Depo. p. 129].

53. Carnival has contemporaneously filed a Motion in *Limine* to exclude four dissimilar prior incidents of passengers tripping on shower thresholds.

54. Carnival has contemporaneously filed a *Daubert* Motion to strike Plaintiff's expert, Mark Young.

(Signature on next page)



FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

Respectfully submitted,

/s/ Cameron W. Eubanks
Cameron W. Eubanks
Fla. Bar No. 85865
Email: ceubanks@fowler-white.com

Christopher B. Smith
Fla. Bar No. 121925
Email: csmith@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201