UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CIV-20557-BLOOM

BARBARA HALL,

Plaintiff,

v.

CARNIVAL CORPORATION.,

Defendant.

_________________________________/

**PLAINTIFF, BARBARA HALL'S,**
**RESPONSE IN OPPOSITION TO DEFENDANT'S DAUBERT MOTION**
**AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, BARBARA HALL, ("Plaintiff"), by and through undersigned counsel, and pursuant to FRE 702/703 and the Federal Rules of Civil Procedure, hereby file this, her Response in Opposition to Defendant's Daubert Motion, and state as follows:

## INTRODUCTION

This case presents a maritime personal injury action. On March 1, 2020, the first night of a cruise aboard Defendant's VALOR, as Plaintiff attempted to get to the toilet in her cabin bathroom, she tripped over an unreasonably high and undifferentiated step/ledge separating the shower from the remainder of the bathroom. As can be noted from the photographs below, the bathroom floor, shower step/ledge, and shower are all the same color and texture and the step/ledge is hidden from view when the shower curtain is closed:





As a consequence, Plaintiff sustained an intra-articular fracture with displacement of the dominant right wrist for which she was compelled to undergo an open reduction with internal fixation (with insertion of a volar plate and screws) on March 10, 2020. Despite the severity of this injury, Defendant refused to treat Plaintiff in its shipboard infirmary because she was unable to pay up front.

**MEMORANDUM OF LAW**

## I. Daubert Analysis, Generally

On the ubiquitous nature of Daubert Motions, particularly by cruise line defendants, Magistrate Judge Jonathan Goodman has astutely recently held:

U.S. Magistrate Judge Jonathan Goodman has astutely recently held:

> *"Daubertizing*" is an informal term lawyers sometimes use when referring to efforts designed to challenge (and ultimately exclude) the other side from offering expert witness opinion testimony at trial (or in connection with a summary judgment motion). In the Southern District of Florida, *Daubertizing* is an often-invoked tactic. In some cases, both sides engage in *Daubertizing*. Sometimes, the *Daubertizing* creates more motion practice (with comprehensive memoranda) than a summary judgment motion.

*Carideo v. Whet Travel, Inc., et al.,* Case No. 16-Civ-23658-Goodman (S.D.Fla. March 16, 2018).

At the bottom of Page 2 of its Motion, Defendant notes that *"In conducting his analysis, Young photographed the subject cruise cabin, took some measurements, and then reviewed the discovery provided to hm by Plaintiff's counsel."* Despite the fact that this is exactly what its own expert, David Martyn, has done[1], not surprisingly, given Defendant's "scorched Earth" approach to litigation, Defendant seeks to have Mr. Young altogether stricken as a witness. In a case involving another cruise line defendant, the 11th Circuit has cautioned that "[w]here a portion of the proffered expert testimony is reliable, wholesale exclusion can constitute an abuse of

[1] "On November 11, 2021, S-E-A inspected the bathroom in Cabin 8429 onboard *Carnival Valor.* S-E-A recorded measurements and photographs of the bathroom." [D Martyn Report at p. 8, attached as **Exhibit A**]

discretion." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275 (11th Cir. 2015) (citing *United Fire & Casualty Co. v. Whirlpool Corp.*, 704F.3d 1338 (11th Cir. 2013)).

In a similar vein, the Court "must be careful not to ***conflate questions of admissibility of expert testimony with the weight appropriately to be accorded*** to such testimony by the fact finder." *In re Trasylol Products Liability Litig.*, 2010 WL 1489793, at *7 (S.D.Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded") (quoting *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)) (emphasis added). In ruling on a *Daubert* Motion, it is not the function of the Court to determine the ultimate persuasiveness of expert testimony. *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).

Further, contrary to Defendant's arguments, the analysis under FRE 702/*Daubert* is a flexible standard, not a rigid one. The standard is not one of absolute certainty, but reasonable certainty/more likely than not. *Wilson v. Taser Int'l, Inc.*, 303 F.App'x 708, 715 (11th Cir. 2008).

In keeping with *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 2795 (1993), the 11th Circuit applies a 3-part inquiry to determine the admissibility of expert testimony under FRE 702:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Quiet Tech. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003); *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004).

Defendant's Motion, is the quintessential *Daubertizing* noted by Judge Goodman in *Carideo*. Without exception, the arguments raised in Defendant's Motion go to the weight of opinions/testimony and not to their admissibility. On this point, the Supreme Court has held:

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence . . .These conventional devices, rather than wholesale exclusion under an uncompromising "general acceptance" test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702.

*Daubert* 113 S.Ct. at 2795 (1993) (citations omitted). The factual basis of an expert's opinion goes to credibility, not admissibility. *In re Trasylol*, 2010 WL 1489793, at *7 (citing *In re Viagra Products Liability Litig.*, 572 F.Supp.2d 1071, 1077-78 (D.Minn. April 2, 2008).

**II. Application of FRE 702/Daubert to Mr. Young and His Opinions**

**A. Qualifications**

Defendant, with good reason, does not challenge Mr. Young's qualifications as an expert. This, of course, would be altogether disingenuous given the number of times Defendant has retained Mr. Young as **its expert.** In fact, at present, Mr. Young is serving as Defendant's expert in 3 cases. [M Young Affidavit, attached as **<u>Exhibit B</u>**]

Mr. Young is a Professional Engineer licensed in Florida and North Carolina. He was awarded a Bachelor of Science in Architectural Engineering and Bachelor of Science in Civil Engineering in 1984 from the University of Miami and has completed all course work toward a Master of Science in Industrial Engineering with a concentration in Biomechanics, Human Factors (Ergonomics) and Safety. He has been fully engaged in the fields of architectural and civil engineering since 1984. From 1985 to the present, Mr. Young has conducted forensic engineering and accident reconstruction. In particular, he has "been retained by various cruise lines to inspect and evaluate bathrooms located aboard ship and to consult on the bathrooms' compliance with applicable maritime standards, building codes and/or regulations." [M Young Affidavit, attached as **<u>Exhibit B</u>**; M Young CV, attached as **<u>Exhibit C</u>**]

**B. Methodology**

**1. Mr. Young's Reliance on the NFPA *Life Safety Code* is Acceptable and Justified**

As a threshold matter, Defendant's argument against application of the NFPA *Life Safety Code* is properly rejected. Defendant takes issue with the fact that Mr. Young *"relied on only one industry standard – one which does not apply to this cruise vessel."* If only one standard applies, why must Mr. Young rely on others? More importantly, however, while not applying with force of law to Defendant's ship, it is entirely appropriate for Mr. Young to rely on the NFPA (National Fire Protection Association) *Life Safety Code* inasmuch as such standards/guidelines/recommendations are nonetheless admissible as bearing on the standard of care in determining negligence.[2] *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir. 1975) (affirming admission of advisory materials published by the Federal Aviation Administration); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir. 1978) (reversing trial judge's order granting a directed verdict to defendant because district court improperly failed to consider expert witness testimony based on industry standards in the National Fire Protection Association Code); *see also Darville v. Rahming Shipping, Ltd.*, No. 85-Civ-1282-Marcus, 1987 WL 48393, *10 (S.D.Fla. Dec. 17, 1987) (rejecting argument that regulations for vessel of one size were irrelevant to one of a smaller size because "it is arguable that [defendant's] failure to fulfill [non-binding] Coast Guard or other maritime requirements still constituted some evidence of negligence"). In fact, in this District, it has been held that "***failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted.***" *Darville*, 1987 WL at *10 (emphasis added); *see also Robertson v. Burlington N.R.R. Co.*, 32 F.3d 408 (9th Cir. 1994); *Giorgio v. Holland America Line, Inc.*, 2006 WL 1042003, at *2 (D.Wash. 2006);

---

[2] The "principles of shipowner's liability in negligence for injuries to passengers 'differ little from those in use ashore.'" *Monteleone v. Bahama Cruise Line, Inc.* , 838 F.2d 63, 64 (2nd Cir. 1988) (quoting G. Gilmore and C. Black, The Law of Admiralty 23 (n.77) (2nd ed. 1975)). Analogizing cruise ship liability to landowners' liability is "especially apt where the hazard encountered is not unique to the marine environment." *Id.*

*Donlon v. Gluck Grp., LLC,* 2011 WL 6020574,*6 (D.N.J. 2011); *Alderman v. Wysong & Miles Co., 486* So.2d 673 (Fla. 1st DCA 1986).

Furthermore, Mr. Young's opinion that the shower step/ledge failed to comply with NFPA 101 is an acceptable and admissible opinion that will aid a jury in determining whether the step posed a fall hazard for Plaintiff. *See Guevara v. NCL (Bahamas) Ltd.,* 2017 U.S. Dist. Lexis 126253 (holding that although Plaintiff's expert did not have a background in marine architecture or engineering his background as a land-based engineer was applicable where the passenger did not allege that any particular maritime condition caused or contributed to his injures); *see also Leroux v. NCL (Bahamas) Ltd.,* 2017 U.S. Dist. Lexis 94156, 2017 WL 2645755 (a very similar case to the one at hand, holding that Plaintiff's expert could testify regarding a threshold between Plaintiff's cabin and patio as a hazard even though the expert relied on a land based code and it was "inapplicable" to ships, the opinion would still help the trier of fact); *Holderbaum v. Carnival Corp.,* 2015 U.S. Dist. Lexis 111790 (indicating that in the Eleventh Circuit judges have followed the rule that failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted); *Darville,* 1987 WL at *10; *Monteleone v. Bahama Cruise Line, Inc. ,* 838 F.2d 63, 65 (2nd Cir. 1988) (noting that this standard "parallels [the] treatment of landowners' liability for dangerous conditions" and reversing judgment for plaintiff in bench trial because the record did not support the finding that the shipowner had constructive notice of the injury causing hazard; analogizing cruise ship liability to landowners' liability is "especially apt where the hazard encountered is not unique to the marine environment."); *Rainey v. Paquet Cruises, Inc., 709* F.2d 169, 172 (2nd Cir. 1983) (holding that the standard applicable to landowners applied where a passenger tripped over a stool on a ship's dance floor because there was no indication the stool reached the dance floor as a result of any "condition ... peculiar to maritime

travel").[3]

Under almost identical circumstances in another cruise line trip-and-fall on a step case, where another defendant cruise line similarly sought to exclude certain standards and guidelines on grounds that these were not mandatory and did not have the force of law, in rejecting the cruise line's argument, the court held:

> In the instant case, Plaintiff tripped and fell over a change in elevation outside of a restaurant located in an open atrium area of a large passenger cruise ship. Plaintiffs allegations of negligence do not concern conditions unique to maritime travel. To the contrary, the circumstances surrounding the injury could also exist on land and lead to a lawsuit filed , for example, by a person who tripped over a change in elevation leading up to a shopping mall restaurant. Thus, in *Keefe*, 867 F.2d at 1321 -22, the Eleventh Circuit cited with approval cases that applied the ordinary, reasonable landowner care standard to shipowners where the shipboard hazard was of the type also found on land. *See, e.g.*, *Rainey*, 709 F.2d at 172 (also suggesting that "[t]he extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case").

*Cook v. Royal Caribbean Cruises, Ltd.*, Case No. 11-Civ-20723-Goodman (S.D.Fla. May 15, 2012) (Order on Defendant's Motion in Limine Concerning Safety Recommendations and Guidelines). In fact, in *Cook*, Magistrate Judge Goodman held admissible the **very same** NFPA *Life Safety Code*, upon which Mr. Young relies:

> Framed by these principles, the Court rejects [the defendant's] efforts to exclude all evidence and use of . . . the guidelines – ASTM Designation F1637-95 . . . and NFPA-101 . . . .

---

[3] Defendant's own expert, Mr. Martyn, has admitted that there was nothing "uniquely maritime" about Plaintiff's cabin:

> **Q.** All right. Well, the cabin itself, there's nothing uniquely maritime about it, right?
> **A.** **No**, its size is certainly significantly smaller than any hotel room I've ever been in.
>
> **Q.** Have you stayed at a hotel room in New York?
> **A.** In New York, no.
>
> **Q.** So other than its size, nothing really uniquely maritime, right?
> **A.** Well, it's got life jackets, it's got warning signs on what to do, and that you need to muster at your lifeboat station, **but beyond those things, no**.

[Martyn Deposition at pp. 39-40 (emphasis added), attached as **Exhibit D**]

> **a. ASTM Designation: F1637-95**
> Although the American Society of Testing and Materials "Standard Practice for Safe Walking Surfaces" is a land-based, voluntary recommendation with no force of law, it may still be used as some evidence of the applicable standard of care. As discussed above, the injury here is the type which can and does also occur in similar ways on land. As a result, the Court cannot conclude at this stage that a guideline for a land-based walkway is completely irrelevant to a passenger walkway on a large cruise ship, especially when the area involved is designed to look like a well-known park which is actually situated on land.
>
> . . . . .
>
> **d. NFPA – 101 Life Safety Code**
> The Life Safety Code is subject to the same analysis --and conclusion --as the other standards. Yes, it is not binding. Yes, it concerns changes in level in means of egress and Plaintiff tripped while walking *into* a restaurant. And yes, the recommendations address the means to escape from fire or other hazards but Plaintiff was not trying to avoid a fire. Nevertheless, all of these distinctions may be addressed at trial in the form of the myriad challenges the Court has already described.

*Cook v. Royal Caribbean Cruises, Ltd.*, Case No. 11-Civ-20723-Goodman, p. 7-8 (S.D.Fla. May 15, 2012).

**2. <u>Mr. Young's Opinions are Based on Reliable Methodology</u>**

Preliminarily, Plaintiff does not intend to elicit the following 3 opinions/conclusions from Mr. Young at trial:

> 1. Carnival Cruise Line did not meet the standard of reasonable care in the layout, configuration, design, construction, operation and maintenance of the subject bathroom, specifically the shower curbing.
>
> 2. The injuries that Plaintiff sustained as a result of the alleged trip and fall incident are a direct consequence of Carnival actions and decisions with regard to the subject bathroom and shower curbing.
>
> 6. Carnival had a duty to provide accommodations reasonable and suitable for its short-time guests, passengers such as the Plaintiff.

Concededly, the "Scientific Method" applied here (by both experts) is not the "white coat and laboratory" method invoked when one thinks of "science." Nevertheless, as outlined in his Report and Affidavit, Mr. Young has applied a methodology consistent with the Scientific Method for forensic investigations as follows:

> 18. Insofar as application of the scientific method in the present case, as a Forensic Engineer, I have to rely on testimony, physical evidence and my own in situ inspections documenting subject sites or incident areas including bathrooms,

with observations, measurements, testing on occasion, and photographs. All of this information and data is analyzed and evaluated applying engineering and scientific principles in a pragmatic manner, comparing against existing standards and best practices, judging against a hypothesis to reconstruct how and why the event occurred and utilizing sound scientific and engineering logic grounded and based in turn on my background, training, experience, and knowledge gleaned over the course of my entire career. I have also employed forensically Conspicuity, Color Contrast and Visibility principles from human factors to the effectiveness of warning labels and signs. Application of the scientific method in this manner is accepted in the field of engineering and biomechanics as methodologically sound. I have even performed actual case studies and experiments using human volunteers to test various aspects of human factors as it relates to a specific injury-producing incident or event.

19. ***Here, I formulated a hypothesis that Ms. Hall's fall was caused by her unfamiliarity with the subject bathroom as this was her first cruise, her expectation that her cabin bathroom resembled one she would use on shore, and by the concealed nature of the shower curbing. I then tested this hypothesis during my visit to the ship by inspecting the bathroom and shower curbing, measuring the shower curbing, photographing the bathroom and shower curbing, and observing the conspicuity, or lack thereof, of the shower curbing with no demarcation (ie, no rolled up towel next to it) and with the white curtain open and closed. I then analyzed the available data, including my inspection photographs and measurements; the photographs taken by Ms. Hall, the discovery referenced in my report, including Ms. Hall's deposition, and the NFPA Life Safety Code. Based upon the testing of my hypothesis and this analysis, I came the conclusions in my report, primarily that lack of demarcation and monochromatic nature of the bathroom floor made the shower curbing a hidden danger not conspicuous to Ms. Hall.***

[M Young Affidavit (emphasis added), attached as **Exhibit B**]

Mr. Young's "visual-inspection method" has been accepted by the Supreme Court. *See generally Kumho Tire Co. Ltd v. Carmichael*, 526 U.S. 137, 157, 119 S.Ct. 1167 (1999).

Insofar as his reliance on and application of the NFPA *Life Safety Code,* contrary to Defendant's assertion that Mr. Young has not explained *"how or why [the NFPA] is applicable to the situation at hand,*" as outlined above, the NFPA *Life Safety Code* is properly relied upon here. Further, Mr. Young has explained that "The shower curbing is a change in elevation that must be gotten over by the passenger in order to enter and exit the shower. The NFPA 101 *Life Safety Code* states 'Abrupt changes in elevation of walking surfaces should not exceed ¼ inch.' Furthermore, it states 'Changes in elevation exceeding ½ inch shall be considered a change in level' and goes

on to state that they must be treated as steps and meet all of the associated requirements for steps." He has also indicated that "Since the shower curbing is a change in elevation, it should be properly delineated and distinguished from the adjacent floor surfaces. The NFPA 101 *Life Safety Code* clearly states, 'The presence and location of each step shall be readily apparent.'" [M Young Report at p. 3, attached as **Exhibit E**]

While Defendant may present evidence at trial and argue that the NFPA *Life Safety Code* does not apply and that the Jury should reject Mr. Young's opinions because of this, this does not make his methodology unreliable or his opinions excludable.

Against this backdrop, Mr. Young's formulation of his hypothesis; followed by his visual inspection of the cabin bathroom, which included measurements and photographs, and his analysis of the aforementioned data, including the NFPA *Life Safety Code* follows the Scientific Method and renders the following opinions methodologically sound:

> 3. The current design or condition with the shower curbing is a latent or concealed hazard. It is an abrupt change in elevation that is not conspicuous to even a reasonably alert and observant user.
>
> 4. A differentiation in color or use of a contrasting material or texture treatment to delineate the threshold could have provided a visual cue to the Plaintiff of the existence of this unreasonably and unexpectantly high shower curbing.
>
> 5. From a human factor standpoint, a reasonable expectation is that the architectural elements and characteristics of the subject bathroom closely resemble its landbased counterparts, for example those bathrooms commonly encountered in homes and hotels, despite it being aboard ship.
>
> 7. Carnival did not provide for in the design, construction or operation of the subject bathroom adequate grab bars, handrails or safety rails for a passenger to prevent or arrest their fall once initiated when in the subject bathroom.[4]

[M Young Report at pp. 4-5, attached as **Exhibit E**]

Ultimately, while Defendant may take issue with Mr. Young's reliance on eh NFPA *Life Safety Code,* the factual basis of an expert's opinion goes to credibility, not admissibility. *In re*

[4] Defendant does not take issue with Opinion No. 7.

*Trasylol Products Liability Litig.*, 2010 WL 1489793, *7 (S.D.Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded") (citing *In re Viagra Products Liability Litig.,* 572 F.Supp.2d 1071, 1077-78 (D.Minn. April 2, 2008)).

**C. <u>Assistance to Trier of Fact</u>**

The helpfulness of Mr. Young's opinions to the Jury is manifest in the fact that Defendant itself does not understand how the NFPA may be applied here and how its failure to follow it, or at least consider it, is an indicia of negligence.

While the Jury will be presented (by both sides) with photographs of the bathroom and bathroom floor and, in all likelihood, reach its own conclusion concerning whether the shower step/ledge was hidden or could have been more properly and conspicuously demarked, the average Juror is not in a position to understand the application of regulation/guideline such as the NFPA 101 *Life Safety Code* to what she/she is observing and most certainly will not have knowledge related to the dangers and requirements related to "changes in elevation" such as the step/ledge over which Plaintiff tripped. Mr. Young's conclusions and opinions related to this are very much an explanation of facts not common to the understanding of the average layperson. *See generally U.S. v. Masferrer*, 367 F.Supp.2d 1365 (S.D.Fla. 2000).

**IV. Conclusion**

Inasmuch as Mr. Young's opinions fully satisfy all three (3) criteria of the Court's FRE 702/*Daubert* analysis, particularly the methodology criteria, and Mr. Young's opinions are relevant and material to Plaintiff's claims of negligence, the Court properly denies Defendant's Motion to Strike.

Alternatively, **<u>Plaintiff requests an evidentiary hearing pursuant to LR 7.1(b)(2)</u>** on Defendant's Motion. This will afford the Court a meaningful and complete review of the matters raised in Defendant's Motion. Plaintiff respectfully requests a 30-minute hearing.

DATE: January 31, 2022

Respectfully submitted,

**EDUARDO J. HERNANDEZ, LLC**
*Attorneys for Plaintiff*
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Telephone: (305) 567-0910
Facsimile: (786) 454-8905

By: *_/s/ Eduardo J. Hernandez_*
EDUARDO J. HERNANDEZ
Florida Bar No. 061451
ehernandez@ejh-law.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on January 31, 2022, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

/s/ *Eduardo J. Hernandez*
EDUARDO J. HERNANDEZ
Florida Bar No.: 061451
ehernandez@ejh-law.com

**SERVICE LIST**

**Peter G. Walsh**
Florida Bar No. 970417
pwalsh@1800askfree.com
DAVID W. SINGER & ASSOC., P.A.
1011 South Federal Highway
Hollywood, Florida 33020
Tel.: (954) 920-1571
Fax.: (954) 926-5746

**Eduardo J. Hernandez**
Florida Bar No. 061451
ehernandez@ejh-law.com
EDUARDO J. HERNANDEZ, LLC
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

**Attorneys for Plaintiff**

**Christopher Smith**
Florida Bar No. 607363
csmith@fowler-white.com
FOWLER, WHITE, BURNETT, P.A.
1395 Brickell Avenue – 14th Floor
Miami, Florida 33131
Tel.: (305) 789-9200
Fax.: (305) 789-9201

**Attorneys for Defendant**