UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:21-cv-20557-BB

BARBARA HALL

*Plaintiff*,

vs.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

*Defendant.*

_______________________________________/

**DECLARATION OF MARK A. YOUNG**

I, Mark A. Young, declare and state the following is true and correct under penalty of perjury as follows:

1. My name is Mark Allan Young. I am over eighteen (18) years of age and otherwise competent to make this Declaration.

2. The matters set forth in this Declaration are true and accurate to the best of my knowledge and are based on my personal knowledge.

3. I am an Architectural and Civil Engineer as well as a Biomechanics, Human Factors (Ergonomics), and Safety expert. I am familiar with the above-styled litigation matter involving passenger Barbara Hall as I was retained as an expert witness by Eduardo J. Hernandez on behalf of Plaintiff in the above-styled matter.

4. I have reviewed Defendant's Motion to Strike Testimony of Plaintiff Expert Witness Mark A. Young, PE.

5. I obtained my Bachelor of Science in Architectural Engineering and Bachelor of Science in Civil Engineering degrees in 1984 and have been fully engaged in the fields of architectural and civil engineering since 1984. I have also completed all of the course work toward a Master of Science in Industrial Engineering with a concentration in Biomechanics, Human Factors (Ergonomics) and Safety.

6. I am a licensed Professional Engineer in the state of Florida by examination since 1997 and a licensed Professional Engineer in the state of North Carolina by comity since 2007.

7. As an architectural and civil engineer, I have researched and assessed the applicability of various building codes, such as the South Florida Building Code (SFBC) and the International Building Code (IBC). I have employed the best practices and design standards promulgated and propounded in authoritative references and texts such as the Architectural Graphics Standards, AIA (American Institute of Architects) Standards, ADA (Americans with Disabilities Act) design guidelines including the Accessibility Guidelines (ADAAG) and other Code of Federal

Regulation (CFR) Guidelines. I rely heavily on the authoritative reference the NFPA (National Fire Protection Association) 101 *Life Safety Code Handbook* since it is cited by nearly all the building codes. Furthermore, the standards contained in the *Life Safety Code Handbook* represent years of research and peer review of standards that ensure **life safety** not just fire or emergency safety, and not just for buildings or facilities but for other built environments as well. Additionally, during the course of my career as a civil and architectural engineer I have also relied upon the various applicable ASTM standards.

8. Through my training as an industrial engineer with focus on biomechanics, human factors (ergonomics) and safety, I have researched OSHA (Occupational Safety and Health), NIOSH (National Institute for Occupational Safety and Health), and the National Safety Council's *Accident Prevention Manual* for safety principles, guidelines and standards. Although principally addressing transportation facilities, PROWAG (Public Right of Way Accessibility Guidelines) provides valuable insight into design for vulnerable road users including pedestrians as well as mobility- and sensory-challenged individuals, insight that can be carried over and applied to all aspects of engineering design. My Master's training gave me additional knowledge when it comes to Risk Management and Risk Analysis, Accident Causation, Causative or Contributing Factors, and ultimately Accident Prevention.

9. I am familiar with the application of the Codes cited by plaintiff's expert, David J. Martyn, and myself in this litigation. I have studied the codes/standards as part of my education. I regularly utilize and apply the building codes/standards and utilize the biomechanics, human factors and safety principles in my practice as an engineer. Accordingly, through my education, training and experience I am familiar with what codes/regulations apply to architectural elements, features and characteristics, including those design principles and best practices associated with bathrooms and their layout.

10. From 1985 to the present, I have conducted forensic engineering and accident reconstruction, first with Accident Reconstruction Analysts, Inc. in Miami, Florida from 1985 to 1991, with Benedict Engineering in Tallahassee, Florida in 1993 and as a self-employed Consulting Engineer from 1991 to 1992 and then again from 1994 to the present. During that time, employing analytic and scientific evaluation techniques and methods, I have reconstructed thousands of cases including a number of bathroom cases in hotels and other public and private facilities, as well as numerous cases aboard cruise ships. I was retained by Norwegian Cruise Lines to reconstruct injury events in several cases that occurred aboard the S/S Norway with respect to the bathrooms aboard that ship. I have also been retained in litigated cases to review building plans, which included bathrooms or restrooms, in malls, apartment complexes, commercial/office buildings, etc. throughout the United States to ensure that the structures were in compliance with applicable building codes, standards and regulations.

11. In fact, I have previously been retained by Defendant Carnival as an expert in litigation on numerous occasions and am presently an expert for Defendant Carnival in three (3) cases.

12. In 1991, I was employed by HNTB as an Airport Engineer whose duties included the review of airport improvement plans for the Miami International Airport, which included restrooms on the airport in both landside and airside facilities, to ensure that the structures were

in compliance with applicable building codes and federal standards, beyond the required FAA Guidelines and DCAD requirements.

13. From February 1994 to December 2006, I taught in the Department of Civil, Architectural and Environmental (CAE) Engineering at the University of Miami as a Semester Lecturer, then Professor and finally Professor-Practitioner. During my time at the University I taught both undergraduate and graduate courses primarily in the surveying and transportation curriculum. I also taught Mechanics of Solids and was the CAE professor teaching the IMPACT Lab for incoming freshmen. I taught the review course for the FE (Fundamentals of Engineering) Exam, the first step toward PE, Professional Engineering licensure. I also guest-lectured in the School of Architecture as well as in the Department of Industrial Engineering for the Ergonomics and Safety Program. At all times I promoted to my students the importance of employing the pertinent best practices and standards to the planning, design, construction, operation and maintenance of all infrastructure as well as all transportation modes.

14. In 2007, I moved to North Carolina. From 2007 to 2018, I was the City Engineer in the Development and Design Services Department for the City of Morganton, North Carolina. In my position as a City Engineer for the City of Morganton, North Carolina, I was responsible for reviewing plans for any and all development within the city, which encompassed the construction and/or renovation of buildings and facilities which included bathroom or restroom facilities, to ensure that the plans were in compliance with applicable building codes, standards and regulations. I was also the responsible architect/engineer for all of our in-house designs of buildings and facilities, including bathrooms and restrooms. Due to the City of Morganton's population demographic, ADA guidelines played a prominent role in design considerations for development plans as well as our own in-house project designs for all of the City departments, which have included the CoMMA municipal auditorium, amphitheaters, public spaces, streetscapes, parks and recreation facilities, playgrounds, sports complexes, sidewalk projects, street diets, new building construction as well as building renovations and upgrades which often included bathrooms and restroom facilities.

15. From 2018 to 2019 I served as the Engineering Supervisor in Roadway Design and Construction for the City of Raleigh, North Carolina. In that capacity I supervised and provided oversight of a team of project engineers managing numerous streetscape, greenway, and roadway infrastructure projects for the City. Not surprisingly, these projects required the application of design standards and guidelines to ensure public safety and welfare. My work as a traffic and transportation engineer over the years and especially true with the cities of Morganton and Raleigh exposed me to the human factors involved with effective wayfinding and traffic signage as well as effective pavement markings. The principles of Visual Acuity, Perception and Identification of Hazards, Contrast Signing and the importance of proper background color and lettering, and Surface Contrast had to be routinely employed in the designs to ensure public safety.

16. From 2019 to 2020 I was employed by Citrus County, Florida as County Engineer and Engineering Division Director in Public Works supervising the Aviation, Land Records, Plans Review and Permitting, Stormwater, Surveying and Transportation sections. As with my other engineering roles this position required a thorough knowledge of applicable codes and standards,

including ADA and building codes for the design, construction, operation and maintenance of the county facilities under my jurisdiction.

17. As a Consulting Engineer, primarily in forensic engineering, in the employment intervals between A/E firms, educational institutions and municipalities or public entities since 1992, I have been involved in consulting projects throughout the United States and in the Caribbean wherein I was responsible for researching various building codes including the Bahamas Building Code, the South Florida Building Code, the International Building Code, the Standard Building Code, the Life Safety Code and the ASTM standards and their applicability to various structures, including but not limited to bathrooms. Examples of those projects include the following:

a. I have been retained by various cruise lines to inspect and evaluate bathrooms located aboard ship and to consult on the bathrooms' compliance with applicable maritime standards, building codes and/or regulations.

b. I have also been employed or otherwise retained to review building plans, which included bathrooms in malls, apartment complexes, commercial/office buildings, sports complexes, water and wastewater treatment plants, etc. throughout the United States to ensure that the structures were in compliance with applicable building codes, standards and regulations.

18. Insofar as application of the scientific method in the present case, as a Forensic Engineer, I have to rely on testimony, physical evidence and my own in situ inspections documenting subject sites or incident areas including bathrooms, with observations, measurements, testing on occasion, and photographs. All of this information and data is analyzed and evaluated applying engineering and scientific principles in a pragmatic manner, comparing against existing standards and best practices, judging against a hypothesis to reconstruct how and why the event occurred and utilizing sound scientific and engineering logic grounded and based in turn on my background, training, experience, and knowledge gleaned over the course of my entire career. I have also employed forensically Conspicuity, Color Contrast and Visibility principles from human factors to the effectiveness of warning labels and signs. Application of the scientific method in this manner is accepted in the field of engineering and biomechanics as methodologically sound. I have even performed actual case studies and experiments using human volunteers to test various aspects of human factors as it relates to a specific injury-producing incident or event.

19. Here, I formulated a hypothesis that Ms. Hall's fall was caused by her unfamiliarity with the subject bathroom as this was her first cruise, her expectation that her cabin bathroom resembled one she would use on shore, and by the concealed nature of the shower curbing. I then tested this hypothesis during my visit to the ship by inspecting the bathroom and shower curbing, measuring the shower curbing, photographing the bathroom and shower curbing, and observing the conspicuity, or lack thereof, of the shower curbing with no demarcation (i.e., no rolled up towel next to it) and with the white curtain open and closed. I then analyzed the available data, including my inspection photographs and measurements; the photographs taken

by Ms. Hall, the discovery referenced in my report, including Ms. Hall's deposition,[1] and the NFPA Life Safety Code. Based upon the testing of my hypothesis and this analysis, I came to the conclusions in my report, primarily that the lack of demarcation and the monochromatic nature of the bathroom floor made the shower curbing a hidden danger not conspicuous to Ms. Hall.

20. As a transportation engineer, I employ human factors with respect to wayfinding, pavement markings particularly with regard to Conspicuity, Color Contrast, and Visibility particularly as it relates to effective traffic signing, especially guidance, work zone and warning signage. I have applied the same concepts to pedestrian movements in the roadway environment including the ADA tactile-dome mats. In so doing, I have employed the LRV (Light Reflectance Value) Calculator as well as the Contrast Formula [ Contrast = (B1 – B2) x 100 / B1 ] to determine proper contrast between a background surface and lettering or between the sidewalk and a tactile dome mat, or between a walking surface and a carpet or floor covering.

21. I have also attended numerous Transportation Research Board (TRB) Human Factors Workshops which have dealt in depth with human factors topics such as Visual Acuity, Perceptions of Hazards, Information Overload, Conspicuity, Hazard Delineation or Demarcation, Color Contrast, Knowledge-Based Behavior vs. Experience-Based Behavior, Experience History, etc.

22. These same techniques and methods have been applied in this matter to render my opinions and conclusions. After application of the above scientific method, it is my opinion that Ms. Hall's perception of the hazard, namely the change in elevation between the shower curbing and the bathroom floor, was hindered by a number of factors – lack of any color contrast between the shower curbing and the bathroom floor, the inconspicuousness of the shower curbing, the uniformity of dark color of both the shower curbing and bathroom floor masking any shadowing which could have alerted Ms. Hall or allowed her to perceive the existence of the shower curbing and the change in height or elevation existing.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

In ________________________, on this 30th day of January, 2022.

Mark A. Young

**MARK A. YOUNG**

---

[1] Although I do not expect to testify to this as it is not in my report, I have since also analyzed the deposition of Angela Vaughn.