UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 21-CIV-2057-BLOOM

BARBARA HALL,

Plaintiff,

vs.

CARNIVAL CORPORATION

Defendant.

_________________________________/

DATE TAKEN: Dec. 17th, 2021
TIME: 11:09 a.m.
PLACE: Remote-Audio Video Communication
Pursuant to Supreme Court of
Florida Administrative Order
No. AOSC20-23

DEPOSITION OF DAVID MARTYN

Taken before Julio A. Mocega, Shorthand Reporter, Notary Public in and for the State of Florida at Large, pursuant to Notice of Taking Deposition filed in the above case.

Q. Okay. So here, I think we can shortcut this a little bit. Beyond what's listed on page seven of your initial report, what if anything else, have you looked at?

**A. Beyond what's listed on page seven of this report and page two of my December 6 report, I also reviewed the Defendant's -- pardon me, get the correct title of these. Supplemental Response to the Plaintiff's Second Request for Production, and the Defendant's Supplemental Answers to Plaintiff's Second Set of Interrogatories.**

**I received those documents yesterday.**

Q. All right. And those are the materials that deal primarily, if not exclusively, with prior similar incidents, right?

**A. Correct.**

Q. And I'm sorry, you made mention of page six of your rebuttal report. I don't see --

**A. Page two.**

Q. Page two. I don't see a list of things reviewed there.





**A. If you look at top of page two, in addition to the reports listed in my November 23rd, 2021 report, I reviewed the report of (audio distorted) --**

THE COURT REPORTER: The report of who?

THE WITNESS: Mark A. Young.

THE COURT REPORTER: Thank you.

THE WITNESS: And then I also reviewed the NFPA 101 standard, 2003 edition.

BY MR. HERNANDEZ:

Q. Just so I'm clear then, everything that's listed on page seven of your initial report, Mr. Young's report and the NFPA, the Supplemental Response to Request for Production from the Defendant and the Supplemental Answers to Interrogatories from the Defendant, right?

**A. Yes.**

Q. Okay. How long were you on the ship on November 11?

**A. Not very long. I don't recall the exact time. Maybe more than an hour, less than two.**

Q. And other than the cabin and its





bathroom, did your inspection involve any -- anything else?

**A. No.**

MR. SMITH: If we can, in the next couple of minutes, just have a short break.

MR. HERNANDEZ: Yeah, let me ask one more question and that will be fine.

BY MR. HERNANDEZ:

Q. The cabin and its bathroom, I mean, if there weren't -- well, strike that.

This cabin had a balcony, right?

**A. Yes.**

Q. Okay. If this had been an interior cabin without a porthole, you know, the average person may not know he or she is on a cruise ship, right?

MR. SMITH: Objection to form.

THE WITNESS: Yeah, I can't speak for what the average person may or may not know.

BY MR. HERNANDEZ:

Q. All right. Well, the cabin itself, there's nothing uniquely maritime about





it, right?

MR. SMITH: Objection to form.

THE WITNESS: No, its size is certainly significantly smaller than any hotel room I've ever been in.

BY MR. HERNANDEZ:

Q. Have you stayed at a hotel room in New York?

**A. In New York, no.**

Q. So other than its size, nothing really uniquely maritime, right?

MR. SMITH: Objection to form.

THE WITNESS: Well, it's got life jackets, it's got warning signs on what to do, and that you need to muster at your lifeboat station, but beyond those things, no.

MR. HERNANDEZ: All right. We can take a break.

MR. SMITH: Just five minutes is fine. Thank you, everyone.

(Thereupon, a short recess was taken.)

BY MR. HERNANDEZ:

Q. Okay, Mr. Martyn, I think you told