MAY

**MARK A. YOUNG**

318 La Foret Drive ● Morganton, North Carolina 28655 ● M 305|926-7113 H|O 828|432-5054

*Amended to correct scribner's error.

November 29, 2021

Mr. Eduardo J. Hernandez, Esq.
**EDUARDO J. HERNANDZ, LLC**
10691 N. Kendall Drive, Suite 109
Miami, Florida 33176

**RE:** ***Barbara Hall vs. Carnival Corporation***
*M/S Carnival Valor*

Dear Mr. Hernandez,

Pursuant to your request I conducted a formal inspection of the subject incident bathroom aboard the *M/S Carnival Valor* at the Port of New Orleans, Louisiana on November 11, 2021. The inspection was performed with respect to the above-referenced matter in which the Plaintiff Barbara Hall was injured in a trip and fall incident while traveling as a fare-paying passenger aboard the ship during its regular cruise itinerary. In this report I will outline the materials reviewed, my observations, and my measurements from the inspection of the subject incident bathroom aboard ship. I will then discuss my analysis and reconstruction based on this evidence leading to the rendering of my opinions and conclusions.

- **Materials Reviewed**

The materials reviewed during my initial analysis and reconstruction include the *Complaint; Defendant's Answers and Objections To Plaintiff's First Interrogatories To Defendant; Notice of Service of Plaintiff's Answers To Defendant's Initial Interrogatories; Five (5) Photographs of the Subject Bathroom; and the Deposition of Barbara Hall taken June 29, 2021*. In addition to the documents provided by retaining counsel, a literature review of various standards, guidelines, regulations and recommendations was also conducted, including but not limited to the NFPA ( National Fire Protection Association ) 101 *Life Safety Code, National Safety News,* the National Safety Council, and *Hazard Prevention.*

- **Vessel**

The *M/S Carnival Valor* is a post-Panamax Conquest-class cruise ship sailing to the Caribbean from the Port of New Orleans and operated by Carnival Cruise Line. Built in Northern Italy, she was floated out on March 27, 2004, and christened by American journalist Katie Couric in Miami on December 17, 2004. The ship was recently renovated in 2016. 952 feet in length and 116 feet in beam and having 13 decks, she has a capacity of 2,980 passengers and a crew of 1,180. The ship's port of registry is Panama City, Panama.

( Continued from Page 1 )

- **Incident Background**

The subject incident occurred during the late hours of the night of Sunday March 1, 2020, the first night of the 5-day cruise, while the ship was in navigable waters. According to her testimony, Plaintiff had spent that evening with her travelling companion Angela Vaughan, with whom she was sharing the cabin aboard ship. Eventually both went back to their cabin, Cabin 8-429, an exterior starboard side cabin with balcony on Deck 8, the Verandah Deck. During the night Plaintiff got up and went to go to the cabin bathroom. As she describes in her testimony, the incident occurred as she was entering the bathroom. She tripped on the shower threshold and fell into the bathroom injuring her right wrist. It was later determined that she had in fact fractured her right wrist. The Plaintiff, Barbara Joyce Hall, is a single female residing in Missouri. She was 56 years of age at the time of the incident.

- **Subject Bathroom**

One enters Cabin 8-429 from the carpeted passageway with the entrance door swinging inside to the left. The carpeted entrance hallway to the interior of the cabin measures 31 inches wide. A couple feet into the cabin along this hallway brings one to the bathroom door on the right. The bathroom door is 22 inches wide and is an 1-1/4 inch thick wood door with metal trim all around. The bathroom door swings open to the right out into the entrance hallway. The centerline of the handle for this bathroom door is 34-1/4 inches above the bottom of the door. On the same side as the bathroom door and just passed it on the wall is the light switch for the bathroom lighting. The light switch occupies a space 5-1/4 inches wide and between 41 and 45 inches above the carpeted floor of the entrance hallway. A slight time delay was observed from activating the switch until when the bathroom lights would come either on or off.

To enter the cabin bathroom, a passenger must negotiate an approximately 5-13/16 inches high step. The bathroom door step is nearly 4 inches wide, 3-7/8 inches to be precise. The door step threshold is of polished metal. Upon entering the bathroom, one finds the vanity on the left running that entire side of the bathroom. The shower is immediately to the right. The toilet is straight ahead and slightly to the right situated on the angled wall of the bathroom. It is just over 51 inches from the bathroom door to the opposite wall of the bathroom. The back wall of the bathroom has three sides – a flat side opposite the door approximately 37 inches long, a side 18-1/2 inches long angling at 45 degrees inward toward the shower, and finally the flat back side of the shower measuring 14-1/2 inches long. The wall of the shower parallel to the passageway outside the cabin is 35 inches long. The cabin bathroom floor space is essentially a rectangle roughly 51 inches by 58 inches in dimension with a small trapezoid cut out behind the toilet and shower. In other words, the cabin bathroom occupies roughly 20.5 square feet of the total cabin space. The shower occupies just 6 square feet of the bathroom. Neither the bathroom or shower is equipped with adequate grab bars or safety rails of any kind.

( Continued from Page 2 )

The entire floor area of the bathroom including the shower is covered with a monolithic, monochromatic dark blue-colored tile surface. An 1-1/4 inch wide drain channel forms the perimeter of the bathroom floor space outside of the shower. The remainder of the floor surface outside the shower is then textured to resemble 4 x 4 inch tiles. The shower is also textured to resemble 4 x 4 inch tiles as well. Separating the shower basin from the bathroom area is an 1-inch wide curbing, or ledge, 2-1/2 inches high. A passenger must step over this curbing to enter the shower. There is no way to distinguish the shower curbing from the rest of the flooring in the bathroom as both are the same monolithic material and the same monochromatic dark blue. When closed, the shower curtain also blocks any view that this shower curbing exists.

The cabin is furnished with a single bed and a fold-out couch for sleeping. It is roughly 9 feet from the edge of the bed to the bathroom door.

- **Analysis and Evaluation**

The shower curbing is a change in elevation that must be gotten over by the passenger in order to enter and exit the shower. The NFPA 101 *Life Safety Code* states "Abrupt changes in elevation of walking surfaces should not exceed ¼ inch." Furthermore, it states "Changes in elevation exceeding ½ inch shall be considered a change in level" and goes on to state that they must be treated as steps and meet all of the associated requirements for steps. "Aside from the problems created for persons who are mobility impaired, small changes in elevation in floors are best avoided because of the increased occurrence of missteps where the presence of [a] single step…is not readily apparent." In other words, small changes in elevation pose significant fall risks for an individual.

Obviously, the main function of this curbing is to retain water in the shower basin, keeping it from going onto the bathroom floor. However, a better design would be to have the shower basin sunken with a slight step down into the shower basin. This design eliminates the need for someone to step over when both entering and exiting. It still serves the purpose of keeping the majority of the shower water in the shower basin. It has an added advantage if the entire bathroom floor surface is sloped toward the shower basin, as it would thereby allow all water in the bathroom to be removed by a single drain.

Since the shower curbing is a change in elevation, it should be properly delineated and distinguished from the adjacent floor surfaces. The NFPA 101 *Life Safety Code* clearly states, "The presence and location of each step shall be readily apparent." Because of the essentially monochromatic nature of the bathroom and shower flooring surface as well as the shower curbing, it is difficult for the user to distinguish or identify the presence of the curbing. The curbing is basically invisible. From an architectural design and human factor perspective, the shower curbing should be of a different color and/or surface type from that used on the floor and the shower basin. This color differentiation would provide a visual cue of the existence of the shower curbing. As it exists, the shower curbing is a latent or hidden hazard to the Plaintiff as it would be to any other passenger assigned to this cabin.

( Continued from Page 3 )

If the shower curtain is closed, the shower curbing is hidden from view. Carnival should have reasonably alerted passengers of the existence of the curbing at the shower. Particularly, since this condition would not reasonably be encountered by passengers were they at home or in a hotel. This incident occurred during the first night of the Plaintiff's cruise trip. From a human factor standpoint, given the short time the Plaintiff was aboard ship, she had not become acclimated, adjusted and familiar with the cabin surroundings, including the bathroom and the shower curbing. From a risk management perspective, she has not built up an experience history to draw on and be able to successfully traverse her new environment.

Based on her testimony, the dynamics of her fall and her subsequent injury, Plaintiff obviously fell as she was entering the bathroom, tripping on the shower curbing. Unfortunately, the design of the subject bathroom does not provide any grab bars, handrails, or safety rails to arrest the fall once initiated. Certainly, the vanity does not provide a graspable surface, should one trip on the bathroom step or the shower curbing, to prevent or arrest a trip and fall, or for that matter a slip and fall. In addition, the shower is also not equipped with any grab rails.

Therefore, based on my analysis, education, background and experience, ( See Attached CV ) and a reasonable degree of engineering probability, it is my opinion that:

**1.** Carnival Cruise Line did not meet the standard of reasonable care in the layout, configuration, design, construction, operation and maintenance of the subject bathroom, specifically the shower curbing.

That opinion is based in part or whole on the following additional opinions and conclusions:

**2.** The injuries that Plaintiff sustained as a result of the alleged trip and fall incident are a direct consequence of Carnival actions and decisions with regard to the subject bathroom and shower curbing.

**3.** The current design or condition with the shower curbing is a latent or concealed hazard. It is an abrupt change in elevation that is not conspicuous to even a reasonably alert and observant user.

**4.** A differentiation in color or use of a contrasting material or texture treatment to delineate the threshold could have provided a visual cue to the Plaintiff of the existence of this unreasonably and unexpectantly high shower curbing.

**5.** From a human factor standpoint, a reasonable expectation is that the architectural elements and characteristics of the subject bathroom closely resemble its land-based counterparts, for example those bathrooms commonly encountered in homes and hotels, despite it being aboard ship.

**6.** Carnival had a duty to provide accommodations reasonable and suitable for its short-time guests, passengers such as the Plaintiff.

( Continued from Page 4 )

**7.** Carnival did not provide for in the design, construction or operation of the subject bathroom adequate grab bars, handrails or safety rails for a passenger to prevent or arrest their fall once initiated when in the subject bathroom.

Should any additional material or information become available that may affect my opinions and conclusions, I would appreciate the opportunity to review that material and revise or amend my opinions, if necessary. Should you have any questions regarding these opinions, please do not hesitate to contact me.

Sincerely,

Mark A. Young, PE