UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CIV-20557-BLOOM

BARBARA HALL,

Plaintiff,

v.

CARNIVAL CORPORATION,

Defendant.

_____________________________________/

**PLAINTIFF, BARBARA HALL'S,**
**RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, BARBARA HALL ("Plaintiff"), by and through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the Southern District of Florida, herby files this, her Response in Opposition to Defendant's Motion for Summary Judgment, and states as follows

## I. INTRODUCTION

This case presents a maritime personal injury action. On March 1, 2020, the first night of a cruise aboard Defendant's VALOR, as Plaintiff attempted to get to the toilet in her cabin bathroom, she tripped over an unreasonably high and undifferentiated step/ledge separating the shower from the remainder of the bathroom. As can be noted from the photographs below, the bathroom floor, shower step/ledge, and shower are all the same color and texture and the step/ledge is hidden from view when the shower curtain is closed:





As a consequence, Plaintiff sustained an intra-articular fracture with displacement of the dominant right wrist for which she was compelled to undergo an open reduction with internal fixation (with insertion of a volar plate and screws) on March 10, 2020. Despite the severity of this injury, Defendant refused to treat Plaintiff in its shipboard infirmary because she was unable to pay up front.

## II. MEMORANDUM OF LAW

### A. Summary Judgment Standard

Summary judgment is only appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986); *see also* Fed R. Civ. P. 56. A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir.2001). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court ***should deny*** summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (emphasis added).

"[F]or summary judgment purposes, [the Court's] analysis must begin with a description of the facts in the light most favorable to the plaintiff." *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

### B. Plaintiff Has Established that Defendant Breached its Duty of Reasonable Care and Was Very Much on Notice of a Dangerous Condition

The standard of care due passengers by a cruise ship operator is that standard of care which

is reasonable under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 410 (1959) ("the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case"); *Everett v. Carnival Cruise Lines, Inc.,* 912 F.2d 1355, 1358 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir. 1989), *on remand,* 715 F.Supp. 1069 (M.D.Fla. 1989); *see also Mercer v. Carnival Corporation,* 2009 WL 302274 (S.D.Fla. 2009).

Reasonable care, as a standard for the imposition of liability, requires only that a cruise ship operator have actual or constructive notice of a dangerous or risk-creating condition. *Everett,* 912 F.2d at 1358; *Keefe,* 867 F.2d at 1322; *see also Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 73-74 (6th Cir. 1990); *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 353 (1st Cir. 1988); *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65-66 (2nd Cir. 1988); *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2nd Cir. 1983); *Gibboney v. Wright*, 517 F.2d 1054, 1059 (5th Cir. 1975). As enunciated by the 11th Circuit in *Keefe*:

> [W]e hold that the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances***, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land*** and not clearly linked to nautical adventure.

*Keefe*, 867 F.2d at 1322 (emphasis added). The step/ledge separating the shower from the remainder of the bathroom is no different than one might encounter in a bathroom ashore. As this Court has recently held:

> The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), ***whether by eliminating the risk or warning of it***." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F.Appx at 797.

> "Reasonableness of care, in turn, is measured by the extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and pose greater danger to the passenger." *Miller,* 2016 WL 4809347, at *4 (citing *Reinhardt v. Royal Caribbean Cruises*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D.Fla. Apr. 2, 2013)).

*Radke v. NCL (Bahamas) Ltd.,* Case No. 19-Civ-23915-Bloom, p.4 (S.D.Fla. May 3, 2021) (citations in original) (emphasis added).

**1. Defendant Was on Constructive Notice of a Dangerous Condition**

As this Court has previously observed in discussing "constructive notice":

> "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara,* 920 F.3d at 720 (quoting *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 65 (2nd Cir. 1988)) (citing *Keefe,* 867 F.2d at 1322; *Rodgers v. Costa Crociere, SpA,* 2009 WL10666976, *3 (S.D.Fla. July 6, 2009)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661-62 (11th Cir. 1988)).

*Radke v. NCL (Bahamas) Ltd.,* Case No. 19-Civ-23915-Bloom, p.6. "Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care and causation." *Sofillas v. Carnival Corp.,* 2016 WL 5416110, *2 (S.D.Fla. July 8, 2016) (quoting *Hessen v. Jaguar Cars, Inc.,* 915 F.2d 641, 650 (11th Cir. 1990*); see, e.g., Whelan v. Royal Caribbean Cruises Ltd.,* 2013 WL 5583966, 2 (S.D.Fla. Aug. 16, 2013).

In fact, in this very District in the context of other passenger cases against cruise lines for negligence, it has been held that **a single prior incident is sufficient to place a cruise line on notice of a dangerous condition.** *Milbrath v. NCL (Bahamas) Ltd.,* 2018 U.S.Dist.Lexis 39123 (S.D.Fla. 2018); *see also McDonnell v. Royal Caribbean Cruises, Ltd.,* Case No: 16-Civ-22044-RNS (S.D.Fla. July 14, 2017) (5 incidents out of 218,400 passengers is sufficient to provide a

cruise line with notice of a dangerous condition).[1]

The underlying basis of this lawsuit is that the step/ledge separating the shower basin from the rest of the bathroom in Plaintiff's cabin was an unreasonably dangerous condition (particularly due to the monochromatic color of the entire bathroom floor and lack delineation of the step/ledge). Therefore, the relevancy of these prior incidents relates to the fact that Defendant was very much on notice of the dangerous condition posed by these steps/ledges which caused injuries to passengers, but yet did nothing to correct this.

Inasmuch as the relevancy of evidence is dependent upon the purpose for which it is sought to be admitted, courts apply different standards for the degree of substantial similarity necessary for prior accidents to be admissible depending upon its purpose. Where the purpose is to establish notice, "the rule requiring substantial similarity of those accidents to the accident at issue ***should be relaxed***." *Jackson* v. *Firestone Tire* & *Rubber Co.,* 788 F.2d 1070, 1082 (5th Cir. 1986) (emphasis added); *Ree v. Royal Caribbean Cruises Ltd*., 315 FRD 682, 686 (S.D.Fla. 2016) (citing *In re Cooper Tire & Rubber Co*., 568 F.3d 1180, 1191 (10th Cir. 2009). In rejecting the argument that the plaintiff's accident in *Jackson* was "unique," the court stated "we decline to take such a narrow and unrealistic view of the matter" and went on to hold "any differences in the circumstances surrounding these occurrences go merely to the weight to be given to the evidence." *Jackson,* 788 F.2d at 1082-33; *see also Bailey* v. *So. Pacific Transp. Co.,* 613 F.2d 1385 (5th Cir.1980); *Jones* v. *Otis Elevator Co.,* 861 F.2d 655 (11th Cir. 1988); *Worsham v. A.H. Robins Co*., 734 F.2d 676 (11th Cir. 1984). When used to prove notice:

> ***[A]ll that is required is that the previous injury or injuries be such as to call the defendant's attention to the dangerous situation that resulted in the litigated accident, the similarity and circumstances of the accidents can be considerably***

[1] Similarly, prior claims or lawsuits may show a defendant' s notice of a hazard. *See Karns v. Emerson Electric Co.,* 817 F.2d 1452, 1460 (10th Cir.1987) (prior lawsuits admitted on the issue of notice); *Kehm v. Proctor & Gamble,* 724 F.2d 613, 625 (8th Cir. 1983) (prior lawsuit complaints admitted on the issue of notice); *Hobart Corp. v Siegel,* 600 So.2d 503, 504 (Fla. 3rd DCA 1992) (prior lawsuits admitted on the issue of notice).

> ***less than that which is demanded when the same evidence is used for one of the other valid purposes***.

*Schmelzer* v. *Hilton Hotels Corp.*, 2007 WL 2826628, *2 (S.D.N.Y. 2007) (citations omitted) (emphasis added).

The 11th Circuit has made it clear that prior incidents need not be identical or match the litigated incident in every detail in order to be relevant evidence of notice. Indeed, requiring exact identity of every possible characteristic of the prior and litigated incidents would be both an impossible and an unnecessary burden; only the material factors need be the same. *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641 (11th Cir. 1990).

In *Hessen,* the plaintiff's subrogee, Allstate Insurance Company, sued for damage caused by a fire in Hessen's 1980 Jaguar XJ6 automobile. Allstate introduced testimony through an expert that the cause of the fire was fuel leakage, which could have come either from a defect in the fuel hose itself or from a loose fuel hose connection; Allstate's expert could not determine the precise mechanism of the fuel leakage due to the presence of "a number of possible candidates" and the destruction in the fire of the critical parts that would have, if preserved for examination, revealed the precise mechanism. *Id.* at 647 (and Fn11). The trial court allowed Allstate to introduce evidence of complaints, by other owners of 1980 Jaguar XJ6 vehicles, concerning "fuel leaks and fuel odors," beginning two to three years before the fire in Hessen's vehicle. Allstate's expert testified that the effect of the defect in the prior Jaguar XJ6 vehicles and in Hessen's vehicle was the same, namely "fuel leakage," but made no attempt to be more precise in his explanation of the defect in the prior incidents. *Id.* at 650. The 11th Circuit held that the trial court did not abuse its discretion by admitting the prior complaints; the complaints involved "similar problems of fuel odors and leakage," making the circumstances of the prior incidents "similar enough" to pass the substantial similarity test for admissibility. *Id.* The prior incidents of fuel leakage in 1980 Jaguar XJ6 vehicles were similar enough to be admissible, even though the prior incidents did not

necessarily involve the exact mechanism of fuel leakage present in Hessen's case, and indeed Allstate's expert could not determine the precise mechanism of fuel leakage even in Hessen's case much less in the prior fires.

In order to be admissible even as to other issues, such prior incidents need only be "substantially similar" and not identical. *See e.g. Weeks*, 733 F. 2d at 1491 (other models of shotgun with similar safety systems). For example, accidents occurring at different locations on the defendant's premises or involving similar products are admissible where they share one or more of the essential characteristics of the subject incident. *See Taiairol v MSC Crociere S.A.*, 677 FedAppx 599 (11th Cir. 2017); *Borden, Inc.* v. *Fla. E. Coast Railway,* 772 F.2d 750 (11th Cir. 1985); *Ramos* v. *Liberty Mut. Ins Co.*, 615 F.2d 334 (5th Cir. 1980). In *Taiairol*, the 11th Circuit considered the case of another passenger plaintiff who slipped and fell on the metal nosing of a step in the ship's theater. The court provided some relevant and instructive language in its case opinion. The court wrote the following regarding the admissibility of prior incidents:

> As this Court has previously stated, a plaintiff must present evidence of accidents that are substantially similar to hers. *Jones v. Otis Elevator Co*., 861 F.2d 655, 661-62 (11th Cir. 1988)(stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). ***That means that, while Taiariol was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip***, *see Sorrels*, 796 F.3d at 1287 ("The substantial similarity doctrine does not require identical circumstances…"), ***she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps.***

*Taiairol*, 677 FedAppx at 601 (citations in original) (emphasis added).

"'Substantial similarity' ***does not require identical circumstances and allows for some play in the joints depending on the scenario presented and the desired use of the evidence***." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (emphasis added).

Under somewhat similar circumstances, the 11th Circuit has recently reversed entry of Summary Judgment against a passenger in another cruise line case, where the passenger was

injured from a trip and fall over a threshold "because the stainless steel baseboard 'reflected the carpet' and looked 'flush to the floor, like an optical illusion.'" *Bunch v. Carnival Corp.*, Case No. 19-12935, p. 3 (11th Cir. Sep. 10, 2020) (unpublished opinion). In reversing the District Court, the 11th Circuit held:

> The earlier trip and falls at Deck 10 thresholds, and the warnings posted there, are sufficient to show a genuine issue of material fact about Carnival's actual or constructive knowledge of the dangerous condition at the aerobics room threshold on Deck 11. The district court focused on the height and location differences between the Deck 10 and Deck 11 thresholds in concluding that they were not substantially similar, but Bunch's negligence claim was not based solely on an allegation that the height of the aerobics room threshold on Deck 11 was dangerous. Instead, her theory was that the "optical illusion" created by the stainless steel baseboard reflected the flooring and made it appear as if there was no threshold at all. Photographs of the aerobics room threshold taken shortly after Bunch's fall show that the stainless steel baseboard did reflect the carpet.
>
> Bunch has put forth sufficient evidence that "conditions substantially similar to the occurrence in question [] caused the prior accident." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-22 (11th Cir. 1988).

*Id.* at pp. 10-11 (citations in original).

Here, as is all too usual in cruise line litigation, Defendant failed to disclose any prior incidents in response to Plaintiff's initial paper discovery. Thereafter, in response to Plaintiff's Second Interrogatories and Second Request for Production, in part, seeking discovery into prior similar incidents, Defendant lodged improper, canned, and formulaic objections.

Next, despite having been properly noticed to speak on "*Facts and circumstances of prior similar incidents on CONQUEST-Class ships (**passenger fall over the step/threshold of a cabin bathroom shower**) for the three (3) year period prior to Plaintiff's incident*," when Defendant's Corporate Representative appeared for deposition on November 30, 2021, Defendant had taken it upon itself to have the representative prepared to respond *only* to prior similar incidents on the subject ship --VALOR. This deposition revealed 2 prior similar incidents on this ship:

1) **<u>March 9, 2017 – Barbara Fisher</u>**. Ms. Fisher tripped on the step/ledge of a shower configured identical to that of Plaintiff's cabin bathroom, with the step/ledge of the same height, with the bathroom floor, step, and shower floor all the same blue to that

of Plaintiff's cabin, and with the same white shower curtain as in Plaintiff's cabin. [Corporate Representative Deposition at P95, L12 - P99, L18, attached as Exhibit 4 to Defendant's MSJ; Defendant's Supplemental Answers to 2nd Interrogatories, attached as **Exhibit E**; Accident Summary Photographs, attached as **Exhibit F**]

2) **June 25, 2017 – Diana Blythe**. Ms. Blythe also tripped on the step/ledge of a shower configured identical to that of Plaintiff's cabin bathroom, with the step/ledge of the same height, with the bathroom floor, step, and shower floor all the same blue to that of Plaintiff's cabin, and with the same white shower curtain as in Plaintiff's cabin. . [Corporate Representative Deposition at P101, L11 - P104, L20, attached as Exhibit 4 to Defendant's MSJ; Defendant's Supplemental Answers to 2nd Interrogatories, attached as **Exhibit E**; Accident Summary Photographs, attached as **Exhibit F**]

That Mss. Fisher and Blythe did not also trip while entering the bathroom to use the toilet, does not make these incidents dissimilar for purposes of "notice." If the absurdity of the "identicalness" argued by Defendant were countenanced, a plaintiff would never be able to prove notice by way of prior similar incidents. As Defendant's Corporate Representative admitted, the Fisher and Blythe incidents occurred on the very same ship, in cabin bathrooms identical in layout to Plaintiff's, in cabin bathrooms of the same configuration to Plaintiff's, in cabin bathrooms with a shower step/ledge of the same size as Plaintiff's, in cabin bathrooms with the same blue monochromatic floor as Plaintiff's, and in cabin bathrooms with the same with the same white shower curtain. [Corporate Representative Deposition at P94, L17 - P104, L20, attached as Exhibit 4 to Defendant's MSJ; Accident Summary Photographs, attached as **Exhibit F**]

Thereafter, on December 7, 2021, the Court heard argument on Defendant's objections to Plaintiff's Second Interrogatories and Second Request for Production. Judge Otazo-Reyes ordered Defendant to respond and identify prior similar incidents to Plaintiff's for a 3 year period for all sister-ships of VALOR. In response, an additional 2 prior similar incidents were revealed as follows:

3) **June 17, 2018 – Mary Jane O'Bryan**. "[W]hile standing in front of the sink in her cabin bathroom she stepped back and accidentally tripped on the shower lip and fell backward injuring her right hand."

4) **<u>January 21, 2019 – Cheryl Bigtree</u>**. "[A]fter brushing her teeth in her cabin bathroom she stepped backward and tripped over the rim of the shower area and hit the back portion of her head on the wall."

[Defendant's Supplemental Answers to 2nd Interrogatories, attached as **<u>Exhibit E</u>**; as to O'Bryan incident, see also USCG Report of Marine Casualty to USCG, attached as **<u>Exhibit G</u>**] Again, these occurred in cabin bathrooms identical in layout to Plaintiff's, in cabin bathrooms of the same configuration to Plaintiff's, in cabin bathrooms with a shower step/ledge of the same size as Plaintiff's, in cabin bathrooms with the same blue monochromatic floor as Plaintiff's, and in cabin bathrooms with the same with the same white shower curtain. [Accident Summary Photographs, attached as **<u>Exhibit F</u>**]

As is readily apparent from the attached photographs [**<u>Exhibit F</u>**], the Fisher, Blythe, O'Bryan, and Bigtree[2] **incidents occurred in cabin bathrooms identical in layout, configuration, and color to the bathroom in Plaintiff's cabin** (depicted on Page 1 above). Although Plaintiff submits that the information set forth in Defendant's Supplemental Answers to 2nd Interrogatories (**<u>Exhibit E</u>**) is sufficient proof that Defendant was on notice of a dangerous/risk creating condition, when combined with the testimony of Defendant's Corporate Representative (at P94, L17 - P104, L20 attached as <u>Exhibit 4 to Defendant's MSJ</u>), the Report of Marine Casualty in the O'Bryan incident (**<u>Exhibit G</u>**), and the photographs contained in Defendant's Accident Summaries (**<u>Exhibit F</u>**), Plaintiff has established that Defendant was on notice.

In analyzing this very issue of prior similar incidents on this very Defendant's ships in the context of "notice" and Summary Judgment, this Court has held:

> ***Here, a reasonable trier of fact could find that the evidence demonstrates that Carnival had at least constructive notice of a dangerous condition on the stairs.*** First, Plaintiff has provided evidence of prior similar incidents involving falls on Staircase 50 on the *Freedom,* another similar staircase on the *Freedom,* and equivalent staircases on sister ships in the Conquest Class of ships. Although Carnival argues that the prior incidents are not similar enough, the Court disagrees.

---

[2] Clearly, Defendant as on notice of all 4 of these incidents inasmuch as all have been disclosed by Defendant from review of its risk management database(s).

> Notably, Vasquez [same Corporate Representative as here] agreed at her deposition that all of the incidents involving sister class ships deal with similar stairs in that they were guest stairs with carpeting and metal nosing. ECF No. [98-6] at 28, p. 108 ***("Q. Okay. And, in fact, all of the incidents that have been identified in this case involving sister class ships also deal with similar stairs in the sense that they are Guest Stairs with carpeting and nosing — metal nosing, correct? A. Yes.")***.

*Johnson v. Carnival Corp.*, Case No. 19-Civ-23167-Bloom (S.D.Fla. April 9, 2021) (emphasis added).

**2. There Exists Ample Evidence that the Shower Step/Ledge was a Dangerous Condition**

In its Motion, Defendant makes the conclusory statement that *"Plaintiff fell as a result of her own conduct."* While Defendant will no doubt argue this at trial and accuse Plaintiff of being a "drunk," this is a determination for the Jury, and only the Jury. With the record before the Court as this stage and in the light most favorable to Plaintiff, Defendant presents no evidence that Plaintiff was intoxicated at the time of her fall and/or that any such intoxication was the proximate cause of her fall.

Conversely, irrespective of her own testimony, Plaintiff has adduced evidence of the dangerous nature of the shower step/ledge:

1) As discussed in Section B(1) above, Defendant was aware of at least 4 prior similar incidents, yet took no action to remedy the danger.

2) Ms. Vaughn has testified:

**Q.** Now, as I understand it, the shower area of the bathroom had a curtain; correct?
**A.** Right.

**Q.** Okay. And as I also understand it, the entire floor of the bathroom was the same color, a blue speckled color?
**A.** Okay.

. . . . .

**Q.** All right. Do you remember it all being the same color?
**A.** I believe it was, yeah.

. . . . .

**Q.** All right. I'm showing you a photo that I'll mark as Plaintiff's Exhibit A.
**Q.** Do you recognize this -- what's depicted in this photograph?

**A.** Right, yeah, well, up there to the top right -- oh, yeah, I see it now. It's the shower. **Yep. Oh, gosh, yeah, that looks horrible.**

[A Vaughn Deposition at P114, L7 - P116, L2, attached as Exhibit 3 to D's MSJ; Exhibit A to Deposition of A. Vaughn, attached as **Exhibit C**]

**Q.** Okay. So you'd agree that all of this, bathroom floor, ledge and shower floor, are all the same color and -- all the same color; right?
**A.** Right, yeah, yeah, you can't really ascertain one from the other, yeah.

. . . . .

**Q.** As you walked into the bathroom, was there any handrail in the immediate entrance area that you could use if you needed to?
**A.** No. I mean –

. . . . .

**Q.** Okay. And going back to Exhibit A for another moment, you said it looked horrible. Do you mean by that that the ledge blended into the bathroom floor and blended into the shower floor?
**A.** Yeah. Yeah, that's – I mean -- yeah, that's not good.

**Q.** We know --
**A.** I didn't remember there was a ledge being -- I mean, that's a pretty good ledge.

**Q.** We know -- we know the difficulties that Ms. Hall had with the shower ledge that's in Exhibit A. Did you personally experience any difficulties with this shower ledge?
**A.** Oh, I tripped all over that room.

[A Vaughn Deposition at P117, L7 - 119, L19, attached as Exhibit 3 to D's MSJ]

3) Plaintiff's expert, Mark Young opines:

a) The shower curbing is a change in elevation that must be gotten over by the passenger in order to enter and exit the shower. The NFPA 101 *Life Safety Code* states "Abrupt changes in elevation of walking surfaces should not exceed ¼ inch." Furthermore, it states "Changes in elevation exceeding ½ inch shall be considered a change in level" and goes on to state that they must be treated as steps and meet all of the associated requirements for steps. "Aside from the problems created for persons who are mobility impaired, small changes in elevation in floors are best avoided because of the increased occurrence of missteps where the presence of [a] single step…is not readily apparent." In other words, small changes in elevation pose significant fall risks for an individual. [M Young Report at p. 3, attached as **Exhibit B**]

b) Since the shower curbing is a change in elevation, it should be properly delineated and distinguished from the adjacent floor surfaces. The NFPA

101 *Life Safety Code* clearly states, "The presence and location of each step shall be readily apparent." Because of the essentially monochromatic nature of the bathroom and shower flooring surface as well as the shower curbing, it is difficult for the user to distinguish or identify the presence of the curbing. The curbing is basically invisible. From an architectural design and human factor perspective, the shower curbing should be of a different color and/or surface type from that used on the floor and the shower basin. This color differentiation would provide a visual cue of the existence of the shower curbing. As it exists, the shower curbing is a latent or hidden hazard to the Plaintiff as it would be to any other passenger assigned to this cabin. [M Young Report at p. 3, attached as **Exhibit B**]

c) If the shower curtain is closed, the shower curbing is hidden from view. Carnival should have reasonably alerted passengers of the existence of the curbing at the shower. Particularly, since this condition would not reasonably be encountered by passengers were they at home or in a hotel. This incident occurred during the first night of the Plaintiff's cruise trip. From a human factor standpoint, given the short time the Plaintiff was aboard ship, she had not become acclimated, adjusted and familiar with the cabin surroundings, including the bathroom and the shower curbing. From a risk management perspective, she has not built up an experience history to draw on and be able to successfully traverse her new environment. [M Young Report at p. 4, attached as **Exhibit B**]

d) The current design or condition with the shower curbing is a latent or concealed hazard. It is an abrupt change in elevation that is not conspicuous to even a reasonably alert and observant user. [M Young Report at p. 4, attached as **Exhibit B**]

Further, the unrefuted evidence reveals that there is no reason why the shower step/ledge could not have been demarked in a different color to allow for it to be apparent to users of the bathroom, including Plaintiff. Defendant's expert, David Martyn, has admitted:

**Q.** Okay. Now, speaking of the ledge in particular, the ledge to the shower, you'd agree with me that there's nothing keeping that ledge from being painted a different color, right, than the rest of the bathroom floor in the shower?
**A** **.**I don't know for certain in terms of, you know, what kind of paint would, you know, would stick or itself become a problem. So I can't say with any certainty on that.

**Q.** All right. Well, you can't rule out that there's some paint out there that properly affixes to the material of that ledge. We can agree on that, right?
**A.** I don't know, there may be.

**Q.** Okay. And assuming there is such a paint, we can agree that there's nothing that kept Carnival from painting that ledge yellow, orange, any color that it chose, other than blue?

**A.** Well, if you have other means of visibility, you know, the paint may not be necessary. But I agree, yes, there's nothing that prevents them from using different color combinations when they design these bathrooms.

**Q.** Not only when they design them, but even after the fact. I mean, Carnival, after it took delivery of the ship, could have, if it had chosen to, painted the ledge in this bathroom and other similar bathrooms a different color than the speckled blue? We can agree on that, right?

**A.** Again, I don't have enough information in terms of coatings that could be applied here, but to my knowledge, yes, it's possible.

**Q.** Do you have any information, any at all that the material that this floor is made of prevents it from being painted?

**A.** No.

**Q.** And assuming it's susceptible of painting, you would agree that it could be have been done at shipyard stage?

**A.** Well, again, you know, then we're talking about, we're getting back into the discussion about coatings in terms of, you know, applied at the shipyard, you know, wear and tear, how long does it last. Are there any problems with it chipping or peeling? Again, we don't know.

**Q.** Okay. My question is not insofar as maintenance of a painted ledge. I'm simply asking, assume there's a paint that adheres to this surface, it could have been painted at the shipyard stage; yes?

**A.** Yes, possibly.

**Q.** Okay. And same set of assumptions, assuming there's a paint that adheres to this surface, it certainly could have been painted after Carnival took delivery; yes?

**A.** Under those assumptions, yes.

**Q.** Yes. And it could have also been painted after Carnival learned of other instances where passengers fell on a similar ledge, right?

**A.** Well, I don't know what you mean by similar incidents.

**Q.** Well, you told me you reviewed the defense Answers, Supplemental Answers to Interrogatories and the defense Supplemental Responses to Request for Production, and I know you saw in there some prior incidents where other folks tripped on the same ledge that Miss Hall tripped on, right? You saw that?

**A.** Yes, I saw that, but I didn't see any indication of visibility being an issue in those incidents.

**Q.** In the aftermath of those incidents, nonetheless, the same holds true, a paint that adheres to this surface could have been applied had Carnival chosen to; yes?
**A.** Assuming those assumptions, yes. But there's no indication it would have made a difference in either -- any of those cases.

[Martyn Deposition at P42, L8 - P46, L21, attached as **Exhibit D**]

In this vein, Defendant's Corporate Representative has admitted that Defendant does not know why the entire bathroom floor is all the same color:

**Q.** Why is the entire bathroom floor, including the step and shower, all the same color?
**A.** I really don't know.

[Corporate Representative Deposition at P129, L23-P130, L3, attached as Exhibit 4 to Defendant's MSJ]

The *Lavora v. NCL (Bahamas) Ltd.* and *Caron v. NCL (Bahamas) Ltd.* decisions relied upon by Defendant are inapposite and distinguishable. In *Lavora,* in ruling on Summary Judgment, Judge Cook had before her footage of the passenger plaintiff's fall. *Caron* involved a passenger plaintiff's fall through an open hatch in a restricted crew-only area of the ship.

At a minimum, a question of material fact remains concerning whether the shower step/ledge was a dangerous condition which proximately caused Plaintiff's fall.

**3. Plaintiff Has Not Alleged Negligent Design or Construction**

A plain reading of Plaintiff's Complaint reveals that Defendant's argument related to *"design and construction theories of liability"* is misplaced and has no place here.

To the extent Defendant's argument takes aim at Plaintiff's claim that Defendant "maintained" a dangerous condition in that it knew of it and allowed it to exist, Defendant's argument similarly fails.

As outline above, not only was the shower step/ledge a dangerous condition, but, from at least 4 prior similar incidents, Defendant was on notice of this danger/hazard. Further, Defendant was on notice of this dangerous condition given that each cabin on its ship would be inspected

daily by a Steward and Asst. Steward. [Corporate Representative Deposition at P108, L24 - P109, L7, attached as Exhibit 4 to Defendant's MSJ]

**C. There Exists No Evidence that the Shower Step/ledge was Open and Obvious; to the Contrary, it was Hidden as a Result of the Monochromatic Nature of the Entire Bathroom Floor**

Contrary to Defendant's "poetic license," Plaintiff had not *"used the bathroom multiple times;"* she has entered the bathroom twice -- once after coming aboard and once before retiring to bed. Importantly, prior to her fall, Plaintiff had not used the shower. [A Vaughn Deposition at P113, L10-16 and P114, L2-4, attached as Exhibit 3 to D's MSJ]

When analyzing the open and obvious doctrine in a cruise line negligence case, the Court must consider whether the condition was open and obvious to a reasonable person. In this vein, the 11th Circuit has held that the question is "whether a reasonable person would have observed the condition and appreciated the nature of the condition." *Plott v. NCL America, LLC,* Case No. 19-10109 (11th Cir. Sep. 9, 2019) (unpublished opinion) (citing *Lancaster v. Carnival Corp.*, 85 F.Supp.3d 1341, 1345 (S.D.Fla. 2015) and *Lugo v. Carnival Corp.*, 154 F.Supp.3d 1341, 1345–46 (S.D.Fla. 2015).

In the context of a trip and fall case such as the present, a defendant cruise line cannot prevail on summary judgment on an open and obvious basis unless the Court finds that uncontradicted evidence exists that a reasonable person would be able to (1) observe the change in level of the walking surface and (2) appreciate the resultant danger. Given the record evidence here, Defendant's argument on the basis of "open and obvious" fails:

a) At the time of Plaintiff's fall, the white towel demarking the step/ledge into the shower was not in place. [Plaintiff's Deposition at P144, L25 - P145, L2, attached as Exhibit 1 to D's MSJ] That is, just as in *Radke*, the "condition of the area had changed" and, thus, entry of summary judgment on grounds of "open and obvious" is foreclosed. *Radke,* Case No. 19-Civ-23915-Bloom, p.5.

b) Although Plaintiff was aware of the presence of the step/ledge prior to her fall, **she was not aware of its height prior to her fall and had never stepped over the step/ledge**.

[Plaintiff's Deposition at P182, L7-12 and P184, L3-8, attached as Exhibit 1 to D's MSJ] In fact, Plaintiff has testified:

**Q.** So when you tripped over the threshold did -- were you surprised by the height of that threshold?
**A.** When I got -- when I got myself up I was very surprised.

[Plaintiff's Deposition at P184, L3-8, attached as Exhibit 1 to D's MSJ]

c) There were no markings, warnings, or indications to advise Plaintiff of the degree to which the step/ledge was raised. [Plaintiff's Deposition at P182, L14-19, attached as Exhibit 1 to D's MSJ]

d) The monochromatic nature of the bathroom floor made the step/ledge effectively invisible. "Because of the essentially monochromatic nature of the bathroom and shower flooring surface as well as the shower curbing, it is difficult for the user to distinguish or identify the presence of the curbing. The curbing is basically invisible. From an architectural design and human factor perspective, the shower curbing should be of a different color and/or surface type from that used on the floor and the shower basin. This color differentiation would provide a visual cue of the existence of the shower curbing. [M Young Report at p. 3, attached as **Exhibit B**] Further, Ms. Vaughn has testified:

**Q.** Okay. So you'd agree that all of this, bathroom floor, ledge and shower floor, are all the same color and -- all the same color; right?
**A.** Right, yeah, yeah, you can't really ascertain one from the other, yeah.

[A Vaughn Deposition at P117, L7-14, attached as Exhibit 3 to D's MSJ]

Although dissimilar in that it involved a gap created by a mis-leveled elevator, this Court's prior reasoning in *Gandhi v. Carnival Corp.*, Case No. 13-Civ-24509-Bloom (S.D.Fla. Sep. 25, 2014), on the issue of the **size of the gap** is instructive on the issue of Plaintiff being unaware of the height of the shower step/ledge before her fall:

> Here . . . the record does not indicate that it was evident at the time A.G. entered the elevator with her father and uncle that the gap between the elevator door and the elevator frame was large enough to pose a risk to A.G. ***Though it may be obvious that a gap between an elevator door and frame may pinch a child's hand and lead to a child's lesson learned, paid with a few tears, that obviousness does not extend to a child's entire arm getting jammed in an elevator gap.*** *Cf. Cremeans ex rel. Cremeans v. Speedway SuperAmerica LLC,* 196 F. App'x 401, 405 (6th Cir. 2006) (risk of child sticking finger into a hinge of a closing door is open and obvious). ***The Court cannot find that, as a matter of law, that the elevator gap in this case constitutes an open and obvious condition which obviates a duty to warn.***

*Id*. at 5 (citations omitted) (emphasis added).

As a consequence, because the step/ledge was as dangerous condition of which Defendant was aware, it was under a duty to warn Plaintiff. *See generally Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019).[3] However, the record evidence conclusively establishes that Defendant provided no warnings related to the step/ledge or its height. [Deposition of Corporate Representative at P55, L2-16 and P129, L L4-22, attached as Exhibit 4 to D's MSJ; A Vaughn Deposition at p. 118, attached as Exhibit 3 to D's MSJ]

Further, notwithstanding the plethora of legal authority and disputed material facts to the contrary, even if the Court were to accept Defendant's argument as to "open and obvious," this only "negates liability for failure to warn" and Defendant "may still be liable for maintaining a dangerous condition even if the danger was obvious." *Carroll v. Carnival Corp.,* Case No. 17-13602, p. 12 (11th Cir. Apr. 15, 2020).

**D. In Failing/Refusing to Provide Plaintiff with First Aid -- with Any Aid, Defendant Breached its Duty of Reasonable Care**

The evidence reveals that on at least four (4) occasions, Plaintiff approached Defendant's agents/employees and requested assistance, each time to be refused:

1) On the morning of March 1st, Plaintiff went to guest services and told Defendant's employee "I think I sprained or broke my wrist" and even "showed her my wrist." [Plaintiff's Deposition at P126, L22 - P127, L3, attached as Exhibit 1 to D's MSJ] Defendant's employee did nothing.

2) On the afternoon of March 2nd, Plaintiff went to Defendant's infirmary, spoke to a medical staff member, and was refused treatment when she was unable to pay.

---

[3] Defendant has admitted that this is the applicable duty:

Q. And its duty of reasonable candor under the circumstances, you would agree, extended to warning my client of unknown and non-obvious dangers?
A. I do not this that's relevant in this case, but if -- to the extent that there is a hidden, or unknown danger, unknown to the passenger, that is known to the cruise line, I would agree that the legal duty is that it might have a duty to warn under those circumstances, depending on the circumstances.

[Corporate Representative Deposition at P13, L22 - P14, L 7, attached as Exhibit 4 to D's MSJ]

[Plaintiff's Deposition at P129, L23 - P130, L8, attached as Exhibit 1 to D's MSJ] Defendant's employee did nothing.

3) On March 4th, with the pain growing worse, Plaintiff returned to guest services and "showed him my wrist, I unwrapped it, showed him my wrist" and "[h]e told me that sometimes when people can't afford, they have a compassionate care and I should go down there and tell them that." [Plaintiff's Deposition at P138, L15 - P139, L4, attached as Exhibit 1 to D's MSJ] Defendant's employee did nothing.

4) Thereafter, Plaintiff returned to Defendant's infirmary and, in a showing of anything but compassion, was advised by Nurse Cagumbay that "he didn't know what the guy was talking about, they don't have any such thing." [Plaintiff's Deposition at P138, L15 - P139, L4 and P142, L13 - P143, L4, attached as Exhibit 1 to D's MSJ] Defendant's employee did nothing.

On this issue, Defendant's reliance on *Mumford v. Carnival Corp.*, which is based on *Barbetta v. S/S Bermuda Star* is entirely misplaced and an absolute mis-statement of the law. *Barbetta* is the seminal case standing for the proposition that a cruise line may not be held vicariously liable for the malpractice of its medical staff in treating a passenger Of course, the 11th Circuit overturned *Barbetta* in 2014. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

Instead, Defendant owed Plaintiff a "special duty" of care because of the a "special relationship" which exists between Defendant as a common carrier and Plaintiff as a passenger. *See Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1334 (11th Cir. 1984) ("a ship, as a common carrier, owes a special duty to its passengers."); *see also Doe v. Celebrity Cruises, Inc*., 394 F.3d 891, 908, 913 (11th Cir. 2004) (citing Restatement (Second) of Agency and holding cruise line strictly liable for crew member intentional assaults on passengers; "The case precedent establishes that, due to the special carrier-passenger relationship, the defendants had a non-delegable duty to protect and safely transport Doe during the cruise."). On this very issue and in rejecting a Summary Judgment Motion brought by this very Defendant, Judge Torres (in an R&R later approved by Judge Williams) has held:

> Indeed, section § 314A of the Second Restatement provides that certain special relations give rise to a duty to aid or protect:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> (a) to protect them against unreasonable risk of physical harm, and
> (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> (2) An innkeeper is under a similar duty to his guests
>
> . . . . .
>
> (4) One who is required by law or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.
>
> The comments to the Restatement also shed light on the extent of a common carrier's liability to undertake a duty of care such as this one: The defendant is not required to take any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured. He is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained.

*Noon v. Carnival Corp.*, Case No. 18-Civ-23181-Williams/Torres, p.17-18 (S.D.Fla. Nov. 6, 2019).

Similar to the present matter, *Noon* involved a wrongful death action against this very Defendant by the family of a passenger who died from respiratory arrest after Defendant forced the family return an oxygen tank before the decedent disembarked and failed to render aid. Just as in the present matter where Defendant contends that Nurse Cagumbay recommended to Plaintiff that she by seen by Defendant's ship's physician but she declined, in *Noon*, Defendant argued that the "nurse made a notation in his medical log that he advised the Noon family to bring Mrs. Noon to the medical center for a proper evaluation but that she declined." *Id*. at 20. In support of its Motion for Summary Judgment, just as it does here, Defendant argued that "the Noon family failed to inform any medical crewmember that Mrs. Noon was in respiratory distress or that she needed medical attention." *Id.* at 19. In response, just as Plaintiff here has presented evidence about her visits to Defendant's infirmary, the Noon plaintiffs testified that when they visited Defendant's

infirmary, they advised that decedent was having trouble breathing, that decedent never refused to be seen, and that the crewmember in Defendant's infirmary never asked about decedent's condition. In denying Defendant's Motion for Summary Judgment, the court held:

> ***Given the testimony of Juanita [decedent's daughter] and Mr. Noon, there is an issue of fact as to whether Carnival's medical crewmembers failed to undertake a duty to render aid to Mrs. Noon.*** Carnival argues, on one hand, that the nurse made a notation in his medical log that he advised the Noon family to bring Mrs. Noon to the medical center for a proper evaluation but that she declined. On the other hand, Mr. Noon and Juanita testified that the family's interaction with the nurse was limited and that medical personnel never requested to see Mrs. Noon despite knowledge that she was having trouble breathing. ***Because there is an issue of fact as to how Carnival's medical crewmembers responded to Mrs. Noon's condition, Carnival's motion for summary judgment as to counts three and four should be DENIED.***

*Id.* at 20-21 (emphasis added).

Finally, contrary to Defendant's contention that Plaintiff's surgeon, Kenneth Unruh, opined that she *"did not suffer additional injury after her fall,"* in point of fact, Dr. Unruh testified:

**Q.** Okay. With the injury that you came to understand she suffered, in your experience as a physician who treats these types of injuries, is this the type of injury where emergency care is typically called for?
**A.** Yeah, I would say emergent to urgent care.

**Q.** Okay. And why is that?
**A.** Oh, because you want to try to get this stabilized as quickly as you can. That helps prevent patient pain, can reduce swelling. There's some potential complications down the road if you don't, kind of, get the – you know, swelling -- if you have too much edema in the hand and wrist, that can cause future problems down the road. So yeah, in general, this is the type of injury you want to splint and immobilize and try to get swelling down as quick as possible.

**Q.** And, if you would, tell us a little bit about what these complications from excessive swelling can be?
**A.** Probably the biggest thing I worry about is -- is stiffness, stiffness of the fingers, stiffness of the wrist. We know that she's going to have some swelling from the fracture, but we also know that the longer that fracture is not immobilized, the more swelling they're going to develop. I think that's probably good enough there.

. . . . .

**Q.** And you mentioned this, from a pain standpoint --
**A.** Uh-huh.

**Q.** -- any consequence to her not having been seen by the ship's medical staff?
**A.** Yeah, you just don't -- that -- that -- that wrist is going to be moving around. It's going to be moving that fracture around which could certainly increase the patient's pain.

**Q.** All right. I mean, that – that movement of a fracture such as this, within a reasonable degree of probability, is that a pain generator?
**A.** Yes.

[K Unruh Deposition at P86, L4 - P88, L13, attached as Exhibit 7 to D's MSJ]

**E. Plaintiff's Claim for Punitive Damages**

Without prejudice to her claim for damages for "Failure to Render First Aid" in Count III, Plaintiff withdraws her claim for *punitive damages* in Count III.

**F. Conclusion**

The record evidence proves that prior to Plaintiff's fall, Defendant was very much on notice of the danger posed by the shower step/ledge in Plaintiff's cabin bathroom as a result of prior substantially similar incidents, proves that, this notwithstanding, it failed to warn Plaintiff of this danger which was neither open nor obvious to her, and proves that Plaintiff was refused medical care as a result of her inability to pay for it up front.

At a minimum significant questions of material fact about which foreclose entry of Summary Judgment in Defendant's favor.

**G. Request for Hearing Pursuant to Local Rule 7.1(b)(2)**

Plaintiff requests a hearing on Defendant's Motion for Summary Judgment in order to fully explore and explain the legal and factual issues including the issues to be raised by Defendant in its Reply. This will afford the Court a meaningful and complete review of the matters raised by the motion. Plaintiff respectfully requests a 60-minute hearing.

Dated: January 31, 2022
Miami, Florida

/s/ *Eduardo J. Hernandez*
EDUARDO J. HERNANDEZ
Florida Bar No.: 061451
ehernandez@ejh-law.com
EDUARO J. HERNANDEZ, LLC
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 31st day of January, 2022, via Email to all Counsel on the attached Service List.

**EDUARDO J. HERNANDEZ, LLC**
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

*/s/ Eduardo J Hernandez*
EDUARDO J. HERNANDEZ
Florida Bar No.: 061451
ehernandez@ejh-law.com

**SERVICE LIST**

**Peter G. Walsh**
Florida Bar No. 970417
pwalsh@1800askfree.com
DAVID W. SINGER & ASSOC., P.A.
1011 South Federal Highway
Hollywood, Florida 33020
Tel.: (954) 920-1571
Fax.: (954) 926-5746

**Eduardo J. Hernandez**
Florida Bar No. 061451
ehernandez@ejh-law.com
EDUARDO J. HERNANDEZ, LLC
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Tel.: (305) 567-0910
Fax.: (786) 454-8905

**Attorneys for Plaintiff**

**Christopher Smith**
Florida Bar No. 607363
csmith@fowler-white.com
FOWLER, WHITE, BURNETT, P.A.
1395 Brickell Avenue – 14th Floor
Miami, Florida 33131
Tel.: (305) 789-9200
Fax.: (305) 789-9201

**Attorneys for Defendant**