UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| BARBARA HALL,<br><br>Plaintiff,<br><br>v.<br><br>CARNIVAL CORPORATION,<br><br>Defendant. | CASE NO. 21-cv-20557-BB |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Carnival Corporation ("Carnival"), replies in support of its Motion for Summary Judgment, and states:

1. Carnival is entitled to summary judgment on Plaintiff's premises liability claims in Counts I and II.

Plaintiff opposes summary judgment solely based on the existence of four prior incidents where passengers tripped on shower thresholds on the same class of ship for the three years preceding Plaintiff's incident. As outlined in Carnival's motion *in limine*, those prior incidents should be excluded and not relied on here because they are not substantially similar to the subject incident.

Even so, the prior incidents do not prevent summary judgment. Plaintiff argues that there is a lessened standard for admission of prior incidents where they are used to demonstrate notice. But prior incidents must be substantially similar to be admissible in the first instance. *Prather v. NCL (Bahamas) Ltd.*, 2020 WL 4381412, *5 (S.D. Fla. July 31, 2020). Substantial similarity goes to a prior incident's admissibility, not its weight. *See id.* Courts routinely determine at the summary judgment stage whether prior incidents are sufficient to place a cruise line on constructive notice.

*See id*. (surveying case law). Plaintiff contends that *Milbrath v. NCL (Bahamas) Ltd.*, 2018 WL 2021344 (S.D. Fla. Mar. 8, 2018), stands for the proposition that a single prior incident is sufficient to defeat summary judgment. The *Milbrath* court denied summary judgment on notice grounds because there were warnings given by the cruise line in addition to the prior incident, and "these warnings are evidence that Defendant was aware that thresholds constitute tripping hazards." *Id*. at *4. The prior incident passenger was also deposed in *Milbrath*, giving additional details that supported substantial similarity and notice. *Id*.

Here, Plaintiff was fully-aware of the shower threshold's existence before using the bathroom at the time of the incident. She woke up in the middle of the night after a full day and evening of drinking. Indeed, Plaintiff tripped on the shower threshold despite trying to use the toilet. There is a clear pathway to the toilet from the exterior of the restroom. There is no reason for Plaintiff to have encountered the shower threshold at all on her way to the toilet. A few dissimilar incidents do not create a fact issue on Carnival's prior notice. Plaintiff fell as a result of her own conduct. *See Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359 (11th Cir. 2018).

Indeed, Plaintiff does not argue that there was anything out of place regarding the shower threshold or that it was in disrepair in any way. There is no evidence that the shower threshold needed maintenance at all or even required same. This is not a situation where Plaintiff fell in a transitory substance or tripped over a misplaced item. Instead, Plaintiff claims that the shower threshold was too high, and should have been painted a different color or that warnings should have been provided. Plaintiff's claim for "tripping hazard" appears wholly subsumed within her "failure to warn claim." If not, Plaintiff's claim for "tripping hazard" is a challenge to the shower threshold's design and construction. This theory of negligence is unpled and unsupported. *Frasca*

*v. NCL (Bahamas) Ltd.*, 654 F. App'x 949, n.7 (11th Cir. 2016); *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837 (11th Cir. 2012).

To the extent both claims are essentially for failure to warn, the shower threshold was open and obvious to Plaintiff. Plaintiff relies on this Court's order in *Gandhi v. Carnival Corp.*, 2014 WL 4826758 (S.D. Fla. Sept. 29, 2014), to argue against open and obvious, but *Gandhi* is distinguishable from this case. In *Gandhi*, a three-year-old passenger had her arm past the elbow caught in the gap of an elevator door and the elevator car frame. This Court held that there was an issue of fact whether the gap was an open and obvious condition. In particular, it was unclear whether it was evident to the child's guardians that the elevator gap could trap the child's entire arm as opposed to pinching her hand. *Id*.

Returning here, Plaintiff flatly admitted that she knew of and appreciated that the shower had a threshold. Plaintiff has not cited a single case holding that cruise lines are required to issue superfluous warnings for safe conditions on the ship that patrons admit to already being aware of or otherwise taking additional steps to "accident-proof" a reasonably safe ship. *See Caron*, 910 F.3d at 1369-70. Plaintiff's quibbling with not know exactly how tall the shower threshold was is besides the point and unlike *Gandhi*. *See Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905 (11th Cir. 2017) (affirming summary judgment for cruise line in trip-and-fall case against argument a coaming was too high and dangerously high). Plaintiff knew it presented a change in floor level no matter the height. A threshold is an obvious feature of a shower since something is required to keep water inside. *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41-42 (S.D. Fla. 1986). There is no requirement that Carnival provide a warning for such a ubiquitous feature. Plaintiff simply failed to navigate her bathroom. *Leroux v. NCL (Bahamas) Ltd.*, 743 F. App'x 407 (11th Cir. 2018). Any danger was open and obvious.

2. Carnival is entitled to summary judgment on Count III: Failure to Render First Aid.

Plaintiff has withdrawn her prayer for punitive damages stemming from Count III. The rest of the claim fails as well. Plaintiff is incorrect in arguing that Carnival owes a heightened, special duty to render medical treatment beyond its traditional duty of reasonable care under the circumstances. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1246 (11th Cir. 2014)—in the context of shipboard medical treatment—stated that "[c]arriers owe their ailing passengers 'a duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.'" *Id*. (quoting *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1371 (5th Cir. 1988)). Plaintiff's authority is off-the-mark for imposing a heightened, special duty here. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984), held that the cruise line owes its passengers a "special duty" to provide its passengers with comfortable accommodations as part of the contract of passage. *Id*. at 1334. *Doe v. Celebrity Cruise*, 394 F.3d 891 (11th Cir. 2004), dealt with strict liability for sexual assault claims committed by common carrier employees on patrons.

*Noon v. Carnival Corp.*, 2019 WL 8370846 (S.D. Fla. Nov. 6, 2019), does not support Plaintiff either. The court held there was a factual issue whether the cruise line's non-medical crewmembers had undertaken and assumed a duty to render aid to the passenger when, at the end of a cruise, they retrieved a loaned oxygen tank from the passenger suffering shortness of breath and respiratory distress. The passenger's daughter testified that she asked the cruise line whether a portable oxygen tank was available for disembarkation as they planned to go to the emergency room. The court rejected that the non-medical crewmembers did not owe any duty of care to the passenger under the circumstances given that they had undertaken a duty to act. *Id*. at *4. There was a fact question whether the cruise line was negligent in retrieving the oxygen tank. *Id*. Given

the "special relationship" between passenger and cruise line, the cruise line's crewmembers were not bystanders that did not owe a duty of reasonable care under the circumstances. *Id*. at *7. The cruise line was on notice of the alleged emergency. *Id*. at *7.

Here, the deposition testimony speaks for itself. This was not an emergent situation like in *Noon*. Plaintiff went back to sleep after her injury. The next morning, she first went and got a refund for her upcoming shore excursion. Plaintiff and Vaughn continued to visit ports-of-call. Plaintiff had a brief conversation with the medical staff, but declined to seek medical treatment because she was a nurse and did not want to pay any fees. Vaughn testified that the wrist injury was not an emergency. There is no evidence that Plaintiff was rebuffed by the medical center or that the medical staff demanded payment as a precondition to seeing the shipboard physician. There is no genuine issue of material fact whether Carnival breached a duty of reasonable care under the circumstances.

Further, Dr. Unruh did not testify that Plaintiff's injury was caused or worsened by her own delay in seeking treatment. He testified in generalities that her wrist injury could be a pain generator, but he specifically had no opinion regarding Plaintiff's treatment onboard the cruise. [ECF No. 43 ¶¶ 47-49]. Dr. Unruh was of the opinion Plaintiff did not suffer additional injury after her initial fall. [*Id*.]. Plaintiff has not established causation necessary to prove a stand-alone claim for failure to render medical care as opposed to pain and suffering relating to her initial fall on her premises liability claims. *See Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305, 1310 (S.D. Fla. 2015) ("[T]he passenger must demonstrate facts describing how the alleged delay in treatment caused any injury or caused any existing injuries to worsen."). Carnival is entitled to summary judgment on Count III on this basis as well. *Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1285 (S.D. Fla. 2019).

Respectfully submitted,

/s/ Cameron W. Eubanks
Cameron W. Eubanks
Fla. Bar No. 85865
Email: ceubanks@fowler-white.com

Christopher B. Smith
Fla. Bar No. 121925
Email: csmith@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201