UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-20557-BLOOM/Otazo-Reyes**

BARBARA HALL,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon three separate Motions. Defendant Carnival Corporation ("Defendant") filed its Motion for Summary Judgment, ECF No. [42]; Plaintiff Barbara Hall ("Plaintiff") filed a Response, ECF No. [59]; and Defendant filed a Reply, ECF No [62]. Defendant also filed a *Daubert* Motion to Strike Expert Witness, Mark Young. ECF No. [44]. Plaintiff filed a Response, ECF No. [57], and Defendant filed a Reply, ECF No. [64]. Plaintiff also filed a Motion to Strike/Limit Unreliable Expert Opinions, directed at David Martyn and Lewis Eastlick, M.D. ECF No. [39]. Defendant filed a Response, ECF No. [47], and Plaintiff filed a Reply, ECF No. [51]. The Motions are ripe for the Court's consideration. For the reasons that follow, the Motions are granted in part and denied in part.

## I.    BACKGROUND

On July 17, 2019, Plaintiff initiated this action against Defendant for injuries sustained while aboard Defendant's ship, the Carnival *Valor*. *See* ECF No. [1]. On the first day of her cruise, Plaintiff fell when she tripped over an unreasonably and unexpectedly high threshold installed at the entrance to the shower in her stateroom. *Id*. ¶¶ 9, 17, 22. As a result of her fall, Plaintiff

fractured her right wrist, which necessitated surgery, including the insertion of a metal plate and screws. *Id.* ¶¶ 11, 19. Plaintiff also alleges that Defendant refused to medically treat her, and she sustained additional damage to her wrist, unnecessary mental pain, anguish, pain and suffering, and distress. *Id.* ¶ 35. Based on those allegations, the Complaint asserts three counts of maritime negligence against Defendant, alleging that Defendant breached its duty of care by (1) allowing an unreasonably and unexpectedly high threshold to be installed at the entrance to the shower in the Plaintiff's stateroom, creating a tripping hazard; (2) failing to warn her about a tripping hazard in her bathroom; and (3) failing to treat her injury because she could not pay the applicable fee. *Id.* ¶¶ 7, 15, 33.

In its Summary Judgment Motion, Defendant requests that the Court grant summary judgment on all three counts. As to Count I, Defendant contends that (1) it lacked notice of a risk-creating condition, (2) Plaintiff failed to show that a dangerous condition existed or that Defendant was the proximate cause of Plaintiff's injury, and (3) there is no evidence to support a negligent design or construction theory of liability. As to Count II, Defendant argues that (1) it did not have a duty to warn of a condition of which Defendant was unaware, (2) any failure to warn was not the proximate cause of Plaintiff's injuries, and (3) the shower threshold was open and obvious. As to Count III, Defendant submits that the record does not support Plaintiff's theory that Defendant refused to provide aid until Plaintiff prepaid $500.00 for medical services.[1]

In Defendant's *Daubert* Motion, Defendant challenges the opinions from Plaintiff's engineering expert, Mark Young, as unhelpful to the trier of fact, sounding in legal conclusions, unreliable, and lacking a proper methodology. In Plaintiff's Motion to Strike, Plaintiff contends

---

[1] Defendant also seeks summary judgment on Plaintiff's prayer for punitive damages under Count III. Plaintiff dropped the punitive damages claim in her Response. ECF No. [59] at 22. Therefore, Defendant is granted summary judgment on the punitive damages claim.

that Defendant's expert, David Martyn, impermissibly opines on the ultimate issue of reasonableness; that he is unqualified to opine on conspicuousness, accident reconstruction, lighting, illumination, and visual cues; and he merely relied on his own observations. Concerning Dr. Lewis Eastlick, Plaintiff argues that he provides unqualified opinions regarding mental anguish, and pain and suffering.[2]

## II.   MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute, unless otherwise noted.[3]

Plaintiff, a Missouri resident, was a cruise passenger on board the Carnival *Valor* for a February 29, 2020 Caribbean cruise leaving from New Orleans, Louisiana. ECF No. [43] ¶ 1. Plaintiff purchased an alcoholic drink package for her cruise, allowing her to buy 15 drinks per day. *Id.* ¶ 3. Plaintiff is a licensed practical nurse and maintains employer-based insurance. *Id.* ¶¶ 4–5.

After boarding the ship, Plaintiff and her traveling companion, Angela Vaughn, had a drink at the ship's welcome party. *Id.* ¶ 6. Vaughn is also a nurse. *Id.* Vaughn likewise had an individual alcoholic drink package. *Id.* ¶ 7.

After the welcome party, Plaintiff dropped her luggage off at her cabin and used the cabin bathroom without issue. *Id.* ¶ 8. Plaintiff testified that she had to walk over a threshold between

---

[2] Plaintiff also challenged Dr. Eastlick's opinion regarding pain and numbness in her fingers, but Plaintiff has withdrawn that challenge in her Reply. ECF No. [51] at 6.

[3] Defendant filed a Statement of Material Facts to Motion for Summary Judgment. ECF No. [43]. Plaintiff filed a Response/Opposition to Defendant's Statement of Material Facts and Additional Material Facts Foreclosing Entry of Summary Judgment. ECF No. [58]. Defendant filed a Reply to Plaintiff's Statement of Additional Material Facts to Motion for Summary Judgment. ECF No. [63].

the cabin and the bathroom to enter the bathroom. ECF No. [58] ¶ 9. Plaintiff was able to observe that the bathroom had a shower. *Id.* Plaintiff further testified that, on her first visit to the bathroom, nothing blocked her view of the shower area. ECF No. [43-1] at 26. Plaintiff used a tub/shower combination at home, so she was used to stepping over the tub portion to use the shower. ECF No. [43] ¶ 11. In addition, Plaintiff testified that when she first used the bathroom, she noticed that the shower had a blue threshold separating it from the rest of the bathroom floor, which was also blue. ECF Nos. [43-1] at 26, 41, [43-3] at 29-30, [43-4] at 15, [58] ¶ 9.

After dropping off their luggage, Plaintiff and Vaughn "walked all over the ship." ECF No. [43] ¶ 12. They consumed more drinks after dinner. *Id.* ¶ 13. Plaintiff purchased at least 12 drinks—a combination of fruity cocktails, shots, and wine—on the day of the incident. *Id.* ¶ 14. Plaintiff drank at least part of all 12 drinks. *Id.*

Plaintiff and Vaughn retired to their cabin sometime before midnight. *Id.* ¶ ¶ 15. In response to the question, "were you drunk when you went to bed?" Plaintiff responded, "I had been drinking." *Id.* ¶ 16. Vaughn testified, "I just don't remember a whole bunch, as terrible as that sounds." *Id.* ¶ 17. Vaughn also testified that she "was drinking shots like they were going out of style[ ]" and "drinking like a sieve." *Id.*

Before going to sleep, Plaintiff used the bathroom again without having an issue with the shower threshold. *Id.* ¶ 18. Plaintiff woke up "in the middle of the night" to use the bathroom again. ECF No. [58] ¶ 19. Plaintiff turned on the lights in the bathroom. *Id.* When asked during her deposition whether there was sufficient light for [her] to be able to see things clearly, Plaintiff answered yes. ECF No. [43-1] at 42. Plaintiff described her fall as follows:

> Woke up in the middle of the night, had to go to the bathroom. Got up, went in there and I tripped over the shower lip. The bathrooms are very tiny, I'm used to a big bathroom at home, so I tripped over the lip and then . . . before I even got to the toilet.

*Id.* at 30. There was no water or any liquid on the bathroom floor. ECF No. [58] ¶ 21. Plaintiff's fall occurred at approximately 2:30 a.m., four hours after her last drink purchase at 10:30 p.m. *Id.* ¶ 22.

During the cruise, Plaintiff took a photograph of the cabin bathroom, depicting a white towel along the edge of the shower threshold. ECF No. [58-3]. At the time of her fall, the towel was not in place. ECF No. [63] ¶ 3. Plaintiff testified that she did not recall seeing the shower threshold the morning of her fall. ECF No. [43-1] at 31. When asked whether something was blocking her view of the shower threshold at the time of the incident, she answered, "when I got up there was nothing there[,]" and "there was no towel or anything there." *Id.* at 31, 37. Plaintiff testified that she knew there was a threshold between the shower and the rest of the bathroom, but she did not realize how high the threshold was. *Id.* at 46. There were no markings or warnings to indicate that the threshold between the shower and the rest of the bathroom was raised, or the degree to which the step/ledge was raised. *Id.*; ECF No. [58] ¶ 5. Carnival does not warn passengers that there is a threshold to enter the cabin bathroom shower. ECF No. [43] ¶ 52. Before her fall, Plaintiff had not made use of the shower in her cabin. ECF No. [58] at 12 ¶ 1.

Plaintiff did not call for medical assistance or go to the medical center immediately following her fall. ECF No. [43] ¶ 25. Plaintiff testified that she fell asleep after the fall and then went down to guest services the morning of March 1, 2020. ECF No. [43-1] at 32, 35. Guest services refunded Plaintiff for a zip-lining excursion. *Id.* Plaintiff testified that she showed the guest services employee her wrist and the employee remarked, "yeah, you can't very well do zip lining with that and she refunded my money and that was it." *Id.*

On March 2, 2020, Plaintiff and Vaughn left the vessel in Cozumel, Mexico to visit the beach and shop for souvenirs. ECF No. [43] ¶ 27. Upon returning from Cozumel, Plaintiff testified

that she visited the "med bay" and "talked to them, they told me it was going to be $500 on my credit card and I said I didn't have that, so I had to leave. I was just outraged. You know, I told them I have my insurance and they said they don't take private insurance." ECF No. [43-1] at 33. The shipboard medical center is generally a self-pay facility as American-based health insurance is not accepted. ECF No. [43] ¶ 32. Charges at the medical center are typically charged to the passenger's onboard account. *Id.*

On March 3, 2020, Plaintiff went on another shore excursion to Progreso/Yucatan, Mexico. *Id.* ¶ 36. Plaintiff bought an ACE bandage wrap in Yucatan but did not seek medical treatment. *Id.* Plaintiff testified that the next day, on March 4th:

> I went up to the guest relations and I talked to a guy and he told me, you know, I showed him my wrist, I unwrapped it, showed him my wrist. He told me that sometimes when people can't afford, they have a compassionate care and I should go down there [the medical bay] and tell them that. So when I went down there and talked to the gentleman that was down there, he said he didn't know what the guy was talking about, they don't have any such thing. Angela [Vaughn] was with me then.

ECF No. [43-1] at 35.

Susan Vasquez, Defendant's corporate representative, testified that "had [Plaintiff] wanted to see the doctor, or said she needed to see the doctor, she would have seen the doctor, and they would have dealt with the payment situation later." ECF No. [43-3] at 34. Joseph Cagumbay, a nurse working for Carnival on March 4, 2020, ECF No. [43-5] at 3, testified that, according to a medical interaction log for that date, Plaintiff told him that she had fallen in the bathroom three days prior and hurt her forearm, *id.* at 4. According to Cagumbay, Plaintiff asked for the consultation cost, Cagumbay informed her of the cost, and Plaintiff responded that she would "just see the doctor back home." *Id.* Cagumbay testified that medical consultations cost less than $500.00 and denied that pre-payment of costs was required for medical treatment. *Id.* at 4–6.

Plaintiff disembarked the vessel on March 5th in New Orleans. ECF No. [43] ¶ 43. Plaintiff did not seek any medical treatment in New Orleans. *Id.* ¶ 44. Plaintiff and Vaughn instead made the two-day drive back home to Missouri. *Id.* Plaintiff did not seek urgent care in Missouri either since she "figured it's already been broke for five days, so." *Id.* ¶ 45. On March 10, 2020, Plaintiff had surgery on her wrist to repair a distal radius fracture. ECF No. [58] ¶ 46.

Plaintiff's treating orthopedic surgeon, Dr. Kenneth Unruh, testified that patients can have a good surgical result of a distal radius fracture with a ten-day window from their initial injury. ECF No. [45] ¶ 47. When Dr. Unruh was asked if there was, "any consequence to [Plaintiff] not having been seen by the ship's medical staff?" he answered, "that wrist is going to be moving around. It's going to be moving that fracture around which could certainly increase the patient's pain." ECF No. [43-7] at 22. Dr. Unruh also testified, "you want to try to get this [wrist] stabilized as quickly as you can. That helps prevent patient pain, can reduce swelling." *Id.* Moreover, Dr. Unruh testified that Plaintiff's injury required "emergent to urgent care." *Id.*

## III.   LEGAL STANDARD

### A.  Summary Judgment Standard

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S.

at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*, No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material

fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

## B. *Daubert* Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a

preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## IV.   DISCUSSION

### A.   Motion for Summary Judgment

#### i.   Count I—Negligence: Tripping Hazard

Defendant argues that it is entitled to summary judgment on Count I because Plaintiff knew about, and had previously observed, the shower threshold. Defendant also contends that the "scant other dissimilar incidents" did not place Defendant on notice that it needed to change the shower threshold. ECF No. [42] at 5. Defendant also submits that Plaintiff is to blame for falling given her day of drinking, so Defendant was not the proximate cause of her injuries. Finally, Defendant argues that it did not participate in the design or construction of the bathroom.

Plaintiff responds that Defendant was on constructive notice of a dangerous condition given prior similar incidents. Plaintiff also argues that it is for the jury to decide whether she was intoxicated when she fell. Finally, Plaintiff points out that she has not alleged a negligent design or construction claim.

As the Court has already determined relative to Defendant's Motion *in Limine*, Plaintiff has presented evidence of substantially similar prior incidents that are relevant and probative of the issue of Defendant's notice of a dangerous condition. Those prior incidents preclude summary

judgment. *See Bunch v. Carnival Corp.*, 825 F. App'x 713, 717 (11th Cir. 2020) (concluding that evidence of prior incidents at thresholds on different decks of the same ship precluded summary judgment on the issue of notice and highlighting that the plaintiff's theory of her claim was that the baseboard created an optical illusion making it appear that there was no threshold between two rooms on the ship where the plaintiff fell).

Whether Plaintiff fell because she was inebriated is a hotly contested factual issue inappropriate for resolution on summary judgment. The Court has already concluded when ruling on Defendant's Motion *in Limine* that Plaintiff's drink purchases and testimony regarding consumption of alcohol are relevant and probative of her negligence claims. The evidence shows that Plaintiff had purchased 12 alcoholic beverages. "[A]lthough alcohol consumption does not prove intoxication, it is still relevant in its determination because consumption of alcoholic beverages has a tendency to make intoxication more probable." *Milbrath v. NCL Bahamas, Ltd.*, No. 1:17-cv-22071-UU, 2018 WL 2021339, at *2 (S.D. Fla. Feb. 28, 2018). The evidence also shows that Plaintiff did not drink all 12 drinks and there was a 4-hour gap between her last drink purchase and when she fell. This is a factual dispute suited for the jury.

The Court denies summary judgment as to Count I.

**ii.  Count II—Negligence: Failure to Warn**

Defendant argues that it did not have a duty to warn about the shower threshold because it was not on notice of a dangerous condition, the threshold was open and obvious, and that the failure to warn was not the proximate cause of Plaintiff's fall. Plaintiff responds that at the time of her fall, a white towel demarcating the threshold had been removed, creating a change in the condition of the area. In addition, Plaintiff argues that although she may have been aware of a threshold, she was not aware of the height of the threshold.

As set forth above regarding Plaintiff's Count I, the Court concludes that the evidence of prior similar incidents is sufficient to have placed Defendant on notice of a dangerous condition. Accordingly, Defendant's first argument fails.

Defendant argues next that the shower threshold was an open and obvious condition because Plaintiff had previously observed the threshold and was aware of it, and therefore, any failure to warn was not the proximate cause of her fall. "A cruise line does not need to warn passengers or make special arrangements for open-and-obvious risks . . . . In determining whether a risk is open and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions." *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018).

Plaintiff responds that, although she was aware of the step/ledge prior to her fall, she was not aware of its height and had never stepped over the ledge. There were no markings, warnings, or indications to advise Plaintiff of the degree to which the step/ledge was raised, and the monochromatic nature of the floor made the step/ledge effectively invisible. Defendant replies that Plaintiff "simply failed to negotiate a known and obvious hazard." *See Leroux v. NCL (Bahamas) Ltd.*, 743 F. App'x 407, 410 (11th Cir. 2018).

Upon review of the record evidence, and drawing all reasonable inferences in Plaintiff's favor, there is a genuine issue of material fact as to whether the threshold is an open and obvious condition, and whether any failure to warn was the proximate cause of Plaintiff's fall. First, it is undisputed that the bathroom floor, shower floor, and shower threshold are all the same speckled blue color, and that there are no warnings related to the height of the shower threshold. Second, Plaintiff testified that the white towel that had previously demarked the threshold into the shower was not in place at the time she fell. Thus, while Defendant's contention that Plaintiff was aware

of the threshold and had entered the bathroom without incident previously is relevant, it does not preclude the fact that the condition of the area where she fell – namely the demarcation of the threshold with the white towel – had changed because the towel was no longer there. *Radke v. NCL (Bahamas) Ltd.*, 536 F. Supp. 3d 1313, 1321-22 (S.D. Fla. 2021). In addition, Plaintiff had not used the shower prior to her fall, and therefore had not had the occasion to step over the threshold which she contends was too high.

Moreover, Plaintiff's expert, Mark Young, details in his report that the shower threshold constitutes a change in elevation that, according to applicable guidelines, "should be properly delineated and distinguished from the adjacent floor surfaces." ECF No. [44-1] at 3. Young opines further, in pertinent part, that

> [b]ecause of the essentially monochromatic nature of the bathroom and shower flooring surface as well as the shower curbing, it is difficult for the user to distinguish or identify the presence of the curbing. The curbing is basically invisible. [T]he shower curbing should be of a different color and/or surface type from that used on the floor and the shower basin.

*Id*. As such, Plaintiff has provided sufficient evidence to demonstrate that a reasonable person would have difficulty seeing the height of the shower threshold and that a warning may have alerted to the hazard of the high shower threshold. Significantly, "a defendant's conduct need not be the only cause of a plaintiff's injuries . . . rather, the plaintiff must present evidence that the defendant's conduct was, more likely than not, a substantial factor in causing the injury." *Whitney v. R.J. Reynolds Tobacco Co.*, 157 So. 3d 309, 312 (Fla. 1st DCA 2014). The evidence in the record is sufficient to demonstrate a question of material fact.

*Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40 (S.D. Fla. 1986) and *Leroux* are factually distinguishable and Defendant's reliance upon them for support is not persuasive here. In *Luby*, the plaintiff's claim was that the shower ledge was concealed by the drawn shower curtain

and that the cruise line failed to warn her of the ledge's existence. 633 F. Supp. at 41. Here, Plaintiff's claim is not premised upon the existence of the ledge, which she readily acknowledges, but on the allegedly unreasonable height of the ledge. In *Leroux*, the plaintiff's claim involved an allegedly dangerous threshold from the cabin to the balcony, but unlike Plaintiff in this case, the plaintiff in *Leroux* testified that "she knew she had to lift her foot up and over the threshold to get into the cabin without tripping" and that there were different colors distinguishing the balcony threshold and the cabin. 743 F. App'x at 408. Here, while Plaintiff acknowledges the existence of the shower threshold, there is evidence in the record that the bathroom floor, shower pan, and threshold were all the same color, and that there were no markings or warnings regarding the height of the threshold.

Accordingly, the Court denies summary judgment with respect to Count II.

### iii.   Count III—Negligence: Failure to Render Aid

Defendant seeks summary judgment on Count III on the basis "[t]here is no testimony that Plaintiff was refused medical treatment or that Carnival demanded prepayment for same." ECF No. [42] at 11. Defendant further submits that Plaintiff's injury was not an emergency and Plaintiff refused medical treatment until she returned to her home in Missouri. Defendant also contends Plaintiff has not shown that any delay in treatment caused or contributed to her injuries.

Plaintiff responds that she asked Defendant's employees for assistance on four occasions but was refused help. Plaintiff contends Defendant owes a special duty to its passengers to protect them from unreasonable risk of harm. Moreover, Plaintiff points out that her surgeon, Dr. Unruh, testified that a delay in treating Plaintiff's injury could lead to an increase in pain.

"Carriers owe their ailing passengers a duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances." *Franza*

*v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1246 (11th Cir. 2014). Under that general principle, "a cruise line's potential liability hinges on whether it complied with its more general duty to exercise reasonable care under the circumstances." *Disler v. Royal Caribbean Cruise Ltd.*, No. 17-23874-CIV, 2018 WL 1916614, at *3 (S.D. Fla. Apr. 23, 2018). Here, the facts surrounding Defendants' furnishing of aid—or lack thereof—are vigorously debated, precluding summary judgment on this issue.

Plaintiff has set forth facts that, if believed, would show that she requested medical aid on multiple occasions but was denied care because of a prohibitive $500.00 upfront charge. Moreover, Dr. Unruh testified that the lack of medical care could cause the wrist "to be moving around," which "could certainly increase the patient's pain." ECF No. [43-7] at 22. Dr. Unruh also testified that one would "want to try to get this [wrist] stabilized as quickly as you can" to "prevent patient pain" and "reduce swelling." *Id.* Moreover, Dr. Unruh testified that Plaintiff's injury required "emergent to urgent care." *Id.* A jury may conclude that under such circumstances, it was unreasonable for Defendant to demand $500.00 before treating Plaintiff.

For its part, however, Defendant presents several counter-facts contradicting Plaintiff's version of events. Defendant disputes how many times Plaintiff claims she sought medical assistance, that pre-payment of a fee was required for medical care, that the fee was $500.00, and that her injury required immediate attention. The Court cannot weigh the conflicting evidence and assess the witness' credibility on summary judgment. That is the duty of the jury.

The Court denies summary judgment as to Count III.

## B. *Daubert* Motions

### i. Plaintiff's expert Mark Young

Defendant argues that Mark Young, Plaintiff's proffered engineering expert, should be

precluded from testifying because his opinions are unhelpful legal conclusions, and otherwise unreliable. Notably, Defendant does not challenge Young's qualifications.

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive, and a court may need to conduct alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

Helpfulness turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case.

*McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

In pertinent part, Young opines that:

3. The current design or condition with the shower curbing is a latent or concealed hazard. It is an abrupt change in elevation that is not conspicuous to even a reasonably alert and observant user.

4. A differentiation in color or use of a contrasting material or texture treatment to delineate the threshold could have provided a visual cue to the Plaintiff of the existence of this unreasonably and unexpectantly high shower curbing.

5. From a human factor standpoint, a reasonable expectation is that the architectural elements and characteristics of the subject bathroom closely resemble its land-based counterparts, for example those bathrooms commonly encountered in homes and hotels, despite it being aboard ship. Carnival had a duty to provide accommodations reasonable and suitable for its short-time guests, passengers such as the Plaintiff.[4]

ECF No. [44-1] at 4–5.[5] Young relies on the National Fire Protection Association ("NFPA") 101, *Life Safety Code*, and opines that abrupt changes in elevation are hazardous and should be appropriately demarcated. *Id.* at 2–3.

Defendant argues that Young's opinions are unreliable and lack an appropriate methodology. Young details the following methodology in his report that he employed in reaching his opinions:

I conducted a formal inspection of the subject incident bathroom aboard the *M/S Carnival Valor* at the Port of New Orleans, Louisiana on November 11, 2021. . . .

---

[4] Plaintiff has indicated that she does not intend to elicit the "duty to provide" portion of Young's opinion 5. ECF No. [57] at 8.

[5] Defendant also challenges Young's opinions 1 and 2, but Plaintiff states that she will not solicit those opinions at trial. ECF No. [57] at 8. Accordingly, the Court does not engage in an analysis of those opinions here. Young also opined that "Carnival did not provide for in the design, construction or operation of the subject bathroom adequate grab bars, handrails or safety rails for a passenger to prevent or arrest their fall once initiated when in the subject bathroom." ECF No. [44-1] at 5. Defendant, however, does not address that opinion, so the Court does not do so either.

> The materials reviewed during my initial analysis and reconstruction include the *Complaint; Defendant's Answers and Objections to Plaintiff's First Interrogatories to Defendant; Notice of Service of Plaintiff's Answers to Defendant's Initial Interrogatories; Five (5) Photographs of the Subject Bathroom; and the Deposition of Barbara Hall taken on June 29, 2021*. In addition to the documents provided by retaining counsel, a literature review of various standards, guidelines, regulations and recommendations was also conducted, including but not limited to the NFPA [] 101 *Life Safety Code, National Safety News*, the National Safety Council, and *Hazard Prevention*.

ECF No. [44-1] at 1-2. In addition, Young took several measurements of the bathroom, including the distances between fixtures, the dimensions of the bathroom, and the width and height of the shower ledge. *Id*. at 2-3.

Defendant contends that the NFPA 101 only applies to changes in levels in adjoining walkways and that Plaintiff had an unobstructed path to the toilet, making changes in levels irrelevant. Defendant relies further on its own expert to argue that the NFPA 101 does not apply here. Relatedly, Defendant points out that Young admitted at his deposition that NFP 101 is not binding on Defendant. However, simply because the experts disagree with respect to the applicability of NFPA 101 or that the NFPA 101 is not binding on Defendant does not render the entirety of Young's methodology unreliable or his opinions inadmissible. "Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341. Indeed, the "failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted." *Leroux v. NCL (Bahamas) Ltd.*, No. 15-23095-CIV-Williams/Simonton, 2017 WL 2645755, at *12 (S.D. Fla. June 19, 2017) (citing cases). Accordingly, the Court does not find Young's methodology to be unreliable on that basis.

Defendant argues further that "Young offers no cogent methodology to back up [the human

factor] statement [in opinion 5], including no citation of a study or statistical survey of what people expect when they transition from land-based to ship-based environments." ECF No. [44] at 8. Notably, however, Defendant has not challenged Young's qualifications, which in pertinent part, include experience in human factors. *See* ECF No. [44-2] at 24-25; ECF No. [57-3]. And Defendant has provided no authority to support its contention that an expert must necessarily rely on a study or statistical survey, or otherwise that the stated methodology employed by Young is insufficient.

Finally, regarding the challenge to the reliability of Young's opinions, Defendant argues that Young's methodology has an "analytical gap" namely, the failure to consider Plaintiff's alcoholic consumption, and that he should therefore be precluded from testifying. Defendant's argument is not well taken, principally because Young does not offer an opinion on causation in this case. Indeed, at his deposition, Young testified as follows:

> Q.   In your history and experience being a litigation expert, can an individual's alcohol intoxication be a causal element of someone's fall?
>
> A.   Yes, it can be a causal element of a fall.
>
> Q.   And in cases past where you've defended cruise lines, have you seen alcohol intoxication where it's been a causal factor in a plaintiff's fall?
>
> A.   Yes, but that's not been included among my opinions and conclusions. I don't – I do not get into that area. That's not for me to say.

ECF No. [44-2] at 102. Rather, Young's opinions relate to the existence of a dangerous condition, and Defendant does not explain how Plaintiff's consumption of alcoholic beverages is relevant to the issue of whether the shower threshold was dangerous. Therefore, the Court does not find that there is an impermissible analytical gap in Young's methodology.

Contrary to Defendant's assertion, this case is distinguishable from *Torres v. Carnival Corp.*, No. 12-cv-23370-JLK, 2014 WL 3548456, at *3-4 (S.D. Fla. July 17, 2014). In *Torres*, the

expert made no reference to any industry standards and attempted to offer opinions based on attenuated observations, yet he never in fact inspected the ship in question. In contrast, Young references NFPA 101 and conducted an on-site inspection of the cabin's bathroom Plaintiff occupied on the *Valor*.

Defendant also argues that Young's opinions are unhelpful, but the Court disagrees. Young's opinions, especially whether the shower threshold complied with NFPA 101, are not within the understanding of an average lay person and are relevant and helpful in determining whether the height of the shower threshold is a dangerous condition. As explained above, the inapplicability of the NFPA to vessels may be a basis for the cross-examination of Young, but does not make his opinions inadmissible.

### C.  Defendant's expert David Martyn

Defendant hired David Martyn as its engineering expert. Martyn offers three overarching opinions: (1) "[t]he shower threshold arrangement is reasonably safe," (2) "[t]he shower threshold is reasonably conspicuous," and (3) "[t]he toilet is accessible without having to step on or over the shower threshold." ECF No. [39-1] at 5. Plaintiff argues that Martyn cannot opine on the ultimate issue of "reasonableness"; that "on the issue of 'conspicuousness,' Mr. Martyn is unqualified to come to this opinion given that he is not an expert in the field of accident reconstruction"; and that conspicuousness is for the jury to decide. ECF No. [39] at 7–8.

Regarding the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702. "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.*

(citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[6]

Plaintiff specifically challenges Martyn's qualifications to render opinions on "conspicuousness" because he is not an expert in the field of accident reconstruction. However, Plaintiff fails to indicate which portions of Martyn's opinions are offered in the capacity of accident reconstruction. Indeed, in reviewing Martyn's report, the scope of his review in the case was to "opine on the safety of the bathroom shower threshold," ECF No. [47-3] at 4, not to reconstruct Plaintiff's fall. Notably, Plaintiff has not questioned Martyn's qualifications as a forensic engineer, specializing in naval architecture, marine engineering, and industrial and operations engineering. *See* ECF No. [47-1]. Accordingly, Plaintiff's challenge to Martyn's qualifications as an expert in accident reconstruction misses the mark.

Plaintiff's contention that Martyn may not opine on "reasonableness" similarly misses the mark. Notably, Martyn does not state that Defendant acted reasonably here, which would invade the province of the jury. Rather, the opinion with which Plaintiff takes issue is that the "threshold arrangement is reasonably safe." A review of Martyn's report reflects that his opinion regarding

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

reasonableness relates to the safety of the bathroom layout from an architectural standpoint, based upon his qualifications as a forensic engineer, and with reference to relevant regulatory standards. As such, the Court will not exclude this opinion. *See Feldman v. Target Corp.*, No. 3:19-CV-419-MMH-PDB, 2021 WL 1172794, at *2 (M.D. Fla. Mar. 29, 2021) (permitting opinion that corner guard's protrusion into walkway was "inherently dangerous" because it was based on building codes and standards used in the engineering field).

However, the Court concludes that the opinion that the toilet is accessible without having to step on or over the shower threshold should be excluded because it is unhelpful to the jury, as the jury can ascertain that plain fact from photographs alone. That opinion is therefore stricken.

Plaintiff also challenges the following specific statements by Martyn in his report and rebuttal report:

2. "The bathroom floor was raised above the cabin floor to accommodate the bathroom plumbing in between." ECF No. [39-1] at 10.

3. "According to the letter from Ms. Hall's attorney to Carnival, dated May 29, 2020, the incident was described as a 'trip and fall, when the ship swayed, over a raised shower threshold lip in the bathroom where the shower and flooring were the same material and coloring.'" *Id.* at 12.[7]

4. "In addition to direct observation, there are other visual indicators for the presence of the shower threshold to reduce potential trips. The placement of the white rolled-up bathmat/towel by housekeeping parallel against the edge of the threshold provides a visual indication of the shower's placement within the bathroom. Additionally, the white towel's contrast against the blue floor immediately draws your attention after you

---

[7] Defendant concedes that it will not admit at trial the referenced correspondence in paragraph 3. ECF No. [47] at 1 n.1. Therefore, Martyn may not reference the letter or its contents at trial.

open the bathroom door. If, presumably, passengers open the bathroom door and notice the bright metallic threshold between the cabin and the bathroom, their gaze is already drawn to this area." *Id.* at 14.

5. "The discontinuity in the floor's molded grid pattern created by the threshold and adjoining drain channels may provide an additional visual indicator to the presence of the threshold. Finally, the presence of the shower curtain, visible without looking at the floor, should also provide a visual indication of the presence of the shower and a threshold." *Id.* at 15.

6. "[T]he irregular pentagonal shape of the shower pan, with an angle in the open side(s) of the shower, is an additional visual cue of a bathroom that does not resemble its land-based counterparts. Showers in land-based structures are typically rectangular with three walls and one open side with a door or curtain." ECF No. [39-4] at 3.

7. "Although they are the same color and material, their orientations relative to the light source (above the vanity mirror) may create varying shades of light and dark that may produce sufficient contrast to be visually recognizable without the other features identified in S-E-A's initial report." *Id.*

Plaintiff challenges both Martyn's qualifications to make these statements and the methodology he employed.

With respect to paragraph 2, Plaintiff argues that Martyn cites no evidence for this proposition relying solely on his knowledge and experience in ship construction, and therefore that the statement should be excluded. However, the Court fails to see how the statement constitutes an opinion; and even if it did, how it relates to the subject condition in this case—namely the height of the shower threshold—such that it would be the proper subject of a *Daubert* challenge.

With respect to the statements in paragraphs 4 through 7, Plaintiff argues that Martyn is not qualified to testify with regard to visual cues or indicators. However, as Defendant points out, Plaintiff's expert Young will testify about his opinions regarding visual cues and conspicuousness of the ledge, and thus Martyn's statements regarding these issues are relevant to rebut Young's proffered opinions. Moreover, Martyn's methodology as detailed in his report is similar to Young's—Martyn conducted an in-person inspection of the bathroom on board the *Valor* in the cabin occupied by Plaintiff, he reviewed numerous documents from this case and photographs, and consulted various industry-related references. *See* ECF No. [47-3] at 7-8. Plaintiff fails to convince the Court that his statements are unreliable as a result. Accordingly, the Court will not exclude these statements based on Plaintiff's methodology arguments.[8]

Plaintiff also argues that Martyn is not qualified to opine on the issues of lighting or illumination, and that the statements in paragraph 7 are not reliable because his report does not contain any lighting or illumination readings. Defendant argues that the statements focus on how additional elements of contrast make the shower threshold a conspicuous object in the architectural layout of the cabin bathroom. Upon review, even assuming that Martyn has the necessary qualifications and that his methodology was sufficient, the Court determines that the statements in paragraph 7 will not be helpful to the jury in this case because lighting as such is not at issue. Importantly, Plaintiff has not indicated that she intends to claim that a lack of proper lighting caused her fall. As a result, whether or not and how the lighting creates contrast is not relevant in this case. Accordingly, Martyn's statements contained in paragraph 7 will be excluded.

### D.  Defendant's expert Dr. Lewis Eastlick

At issue regarding Dr. Eastlick is only the following statement:

---

[8] To the extent that Plaintiff argues that the statements in paragraph 4 should be excluded as irrelevant and/or unduly prejudicial under Rules 401 and 403, Plaintiff may raise those objections at the time of trial.

> Insofar as additional/unnecessary mental anguish/pain/suffering/distress are concerned, a wrist fracture requires six to eight-weeks of time in order to heal. Ms. Hall's records indicate her fracture healed in a normal way and healing was not delayed. Dr. Unruh returned her to work within six-weeks of the surgery. There is no documentation that Ms. Hall's mental anguish/pain/suffering/distress was impacted in anyway as alleged in Plaintiff's Complaint #35.

ECF No. [39-5] at 7.

Plaintiff's sole argument, unsupported by any authority, is that "[a]s an [Orthopedist], Dr. Eastlick is not qualified to opine on issues of mental anguish or pain and suffering from an emotional standpoint" and "he has not conducted, nor is he qualified to conduct, any personality or psychologic assessment of Plaintiff." ECF No. [39]. Plaintiff's argument is misguided. The Court does not perceive that Dr. Eastlick is opining on Plaintiff's mental health and wellbeing. Rather, Dr. Eastlick was prefacing his opinion that Plaintiff had a normal recovery, as relevant to Plaintiff's pain and suffering claim. Notably, Plaintiff does not argue that Dr. Eastlick is unqualified to opine regarding the recovery for an injury like the one sustained by Plaintiff. As a result, the Court will not exclude the Dr. Eastlick's statement.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Summary Judgment Motion, **ECF No. [42]**, is **GRANTED** as to Plaintiff's claim for punitive damages, and **DENIED** as to Counts I, II, and III.

2. Defendant's *Daubert* Motion to Strike Expert Witness, Mark Young, **ECF No. [44]**, is **DENIED** as set forth in this Order.

3. Plaintiff's Motion to Strike/Limit Unreliable Experts Opinions, **ECF No. [39]**, is **GRANTED IN PART** as set forth in this Order.

Case No. 21-cv-20557-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 1, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record